CITY OF MANSFIELD *v.* ENDLY.

(Decided January 21, 1931.)

*Mr. William F. Black,* city solicitor, for plaintiff in error.

*Mr. George H. Blecker* and *Mr. Van C. Cook,* for defendant in error.

SHERICK, J. This action was begun by the city of Mansfield by virtue of and in accordance with Section 286 of the General Code of Ohio, for the purpose of recovering the sum of $175, previously found by the Bureau of Inspection and Supervision of Public Offices to have been illegally paid by the city to the defendant, Albert B. Endly, as salary for his services as councilman. It is made known that this is a

test case, which will be decisive of a similar question existing between the city and some ten or more other councilmen.

The question presented is dependent upon the constitutionality of Section 4209 of the General Code, and is raised upon demurrer to the petition. The trial court found the demurrer to be well taken, and the city not desiring to further plead, final judgment was entered against it, upon the theory that this section is in conflict with Section 1, Article XVIII, of the Constitution of Ohio, as amended in 1912, and is therefore void and unconstitutional. It is conceded that, if Section 4209 is constitutional, the petition otherwise states a cause of action, and the demurrer was improperly sustained.

It appears that on November 8, 1927, the city council, by ordinance duly enacted, increased the salaries of councilmen from $150 to $300 per annum, and that this increase has been paid to the defendant and other councilmen since January 1, 1928. The amount of the finding made against this defendant was in the sum of $175, as having been illegally paid and received.

The petition further recites that the city of Mansfield has a population of 27,824, as shown by the federal census of 1920, and it is agreed that it is a non-charter city.

It is the claim of the defendant that Section 1, Article XVIII, of the Constitution, classifies municipal corporations into villages and cities, and that in so doing it was intended and prescribed that the legislature should be forbidden to further classify cities, and that Section 4209, General Code, is un-

constitutional and therefore void in so far as it differentiates and limits the compensation of councilmen in cities having a different population.

And as a second proposition it is asserted that the salary ordinance is of local concern only, and authorized by a direct grant of power conferred by Section 3, of Article XVIII, of the Constitution, and not in conflict with any of the other provisions thereof, and that Section 4209 restricts this granted power of "Home Rule" and is for this reason also unconstitutional and void.

Section 4209 of the General Code provides: "The compensation of members of council, if any is fixed, shall be in accordance with the time actually consumed in the discharge of their official duties, but shall not exceed one hundred and fifty dollars per year each, in cities having a population according to the last preceding federal census, of twenty-five thousand or less. For every thirty thousand additional inhabitants so determined, such compensation may be, but shall not exceed, an additional one hundred dollars per year, each, but the salary shall not exceed twelve hundred dollars per annum, and shall be paid semi-monthly. A proportionate reduction in his salary shall be made for the non-attendance of any member upon any regular or special meeting of council; provided, however, that two-thirds of the members elected to council may excuse any member from attendance at any regular or special meeting, and when so excused no reduction in his salary shall be made for such non-attendance."

The two Sections of Article XVIII of the Constitution read as follows:

Section 1. (Classification.) "Municipal corporations are hereby classified into cities and villages. All such corporations having a population of five thousand or over shall be cities; all others shall be villages. The method of transition from one class to the other shall be regulated by law."

Section 3. (Powers.) "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

An analysis of the Code section in question shows that the legislature has subdivided cities for the purpose of fixing the salaries of councilmen into twelve classes and this is done in accordance with population. It is further noted that this section antedates the constitutional amendment of 1912, but that it now stands re-enacted as of date April 1, 1915.

It is contended by the city that the law is general, in that it is applicable to all cities, and that it has uniform operation and does not provide a different form of government for cities of various sizes or classes, and hence, not being special legislation, is not of that character sought to be avoided by Section 1 of Article XVIII.

The people by their constitution of 1851 delegated to the legislature the right to classify cities for the enactment of general laws for municipal government. This power, the legislature, through political interference, proceeded to abuse, to the end that in 1912 the people by express constitutional provision withheld that power from the legislature and re-

tained such in themselves, and unless this act of the legislature can be justified upon a constitutional exception to this withheld power it is unconstitutional and void.

There can be no question that the act cannot be justified under the exception of a police, sanitary, or health measure, or as a debt or tax limitation; and if there is a justification for its enactment it can only be found in the power of the legislature under Section 2 of Article XVIII of the Constitution, to pass general laws to provide for the government of cities.

It is argued that the case of *City of Elyria* v. *Vandemark,* 100 Ohio St., 365, 126 N. E., 314, is not decisive of the question for the reason that in that suit there was a plain case of attempted classification, granting special power to cities of less than 20,000 to consolidate the offices of director of public service and director of public safety; but we believe that the case goes beyond that point, for it is plainly said therein, at page 371 of 100 Ohio State, 126 N. E., 314, 316: "It is to be observed that the constitutional convention not only did not confer any power whatever upon the legislature to make any classification of municipalities, but it denied the legislature such authority by retaining and exercising that jurisdiction itself. It thereby withheld that subject absolutely and entirely from legislative control and permitted it to be no longer a matter of statutory jurisdiction." And it is further said therein, page 372 of 100 Ohio State, 126 N. E., 314, 316, that "it must be presumed that it was intended that there should be no further classification for the purpose of legislation affecting municipal government."

This being true, we are of opinion that it is not a question of whether the act is general or special, for all legislation pertaining to municipal government which has for its basic principle a classification of cities is forbidden, and such an act cannot be justified even if it has a general and uniform operation. This court is not inclined, in face of the people's mandate, to write that in a constitution which the people have failed or refused to do. If the law should be enlarged so that general classification acts may be enacted, that is the sole prerogative of the people themselves, and we have no disposition to countenance an exercise of that withheld power which would no doubt afford encouragement to further legislative enactments thereon and a violation of the plain intent of the constitution makers and the sovereign power who adopted municipal home rule. We can but remember that prior to amendment it was under the guise of a general law that classification reached its absurd zenith.

It is therefore the judgment of this court that Section 4209, General Code, usurps a power withheld by Section 1 of Article XVIII of the Constitution, and is unconstitutional and void.

Coming now to the second question, we observe that *Village of Perrysburg* v. *Ridgway,* 108 Ohio St., 245, 140 N. E., 595, is decisive of the question that municipalities no longer derive their powers from legislative enactment, but that, since the adoption of the constitutional amendment of 1912, all their "powers of local self-government" come from the Constitution direct, by virtue of Section 3 of Article XVIII, and that this section is not dependent upon

or conditioned by Section 7 of Article XVIII, in that a city must first adopt a charter, which is prerequisite to the exercise of home-rule powers. This construction further seems to have been approved in *City of Youngstown* v. *Evans,* 121 Ohio St., 342, 349, 168 N. E., 844. The case of *Goebel* v. *Cleveland Ry. Co.,* 17 N. P. (N. S.), 337, 341, is worthy of note.

The law in this particular now being settled, there remains but one question, that is: Is the subject-matter of the ordinance in question referable only to the exercise of a power of local self-government, and is its subject-matter curtailed by any other granted power now reposing in the Legislature?

By the expression, "to exercise all powers of local self-government," we hold it to be understood that a municipal corporation may enact all such measures as pertain exclusively to it, in which the people of the state at large have no interest or concern, and which they have not expressly withheld by constitutional provision. Applying this understanding to the ordinance in question, we are of one mind that the people of the state of Ohio outside the corporate limits of the city of Mansfield are not interested in the amount of the salary paid by it to its councilmen, and that therefore the subject-matter of the ordinance is purely one of local concern; and we know of no granted power, inalienable right, or constitutional limitation that in any way abridges the city's power to enact such legislation unless it be, as suggested by it, in contravention of the powers granted to the legislature in Section 13 of Article XVIII and Section 6 of Article XIII, in that the legislature may limit the power of municipalities to incur debts

for local purposes and restrict the power of contracting debts.

Returning to the question of councilmen's salaries as being a matter of purely local concern, we remark that it is said in *State, ex rel.,* v. *Hillenbrand,* 100 Ohio St., 339, 343, 126 N. E., 309, 310: "It [the court] has had no difficulty in arriving at the conclusion that the qualification, duties and manner of selection of officers, purely municipal, come within the purview of the provision granting a city 'local self-government.'" And the court in that instance reaffirmed its prior reasoning appearing in *Fitzgerald* v. *City of Cleveland,* 88 Ohio St., 338, wherein Judge Johnson used the following language at page 352, 103 N. E., 516, Ann. Cas., 1915B, 106: "We have seen that the method of electing officers is a governmental function or power, and when the officer to be elected is chosen solely for the performance of a municipal duty, it is a municipal affair." And the court in the *Hillenbrand case,* at page 345 of 100 Ohio State, 126 N. E., 309, 311, likewise refers to *State, ex rel. Lentz,* v. *Edwards,* 90 Ohio St., 310, 107 N. E., 768, 769, where it was said: "That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective."

We recognize that what has been set forth from the *Hillenbrand case* directly applied to a charter city; but in view of the later pronouncement of the court in the *Perrysburg case, supra,* we are unable to see why the same reason does not now apply to a non-charter city. And if the duties and manner of selection of a councilman are purely municipal,

surely it must follow that the manner and amount of his pay is purely a municipal matter and within the purview of the provision granting a city the power of "local self-government."

And now, considering the plaintiff's theory that the ordinance incurs a debt and that Section 13 of Article XVIII and Section 6 of Article XIII of the Constitution of Ohio warrant the legislature in its assumption of power to curtail that prerogative of local self-government, we are of opinion that the salary of a municipal official, although it be in a manner a debt, is not such as is contemplated by these two constitutional limitations upon a city's power, but rather that they refer to the legislature's power to create a tax limitation and maximum indebtedness, and to the manner of expenditure of public funds. It was never intended, under these two sections, to delegate to the legislature the power to determine the salary of municipal officers. To permit a city government to define and prescribe the duties of a municipal official and then to permit the legislature to fix his compensation would not only seem to be, but would be, utter foolishness. If the council should by ordinance fix its members' salaries, or those of other municipal servants, at too high a figure, we have no doubt that the municipal electorate would quickly right the situation. If the plaintiff's interpretation of these sections is correct, then the people of the state delegated to the legislature that which they expressly reserved to their municipal subdivisions; and they are thereby deprived of one of the first essentials of municipal home rule. Such was not the purpose of the people as expressed in 1912 in the adoption of Article XVIII.

In *State, ex rel. Atty. Gen.,* v. *Beacom,* 66 Ohio St., 491, 64 N. E., 427, 428, 90 Am. St. Rep., 599, the court, speaking through Judge Shauck, quotes Cooley with approval in his remark, "Acquiescence for no length of time can legalize a clear usurpation of powers where the people have plainly expressed their will." Such is the situation here developed.

The plaintiff further advances that Section 4209, General Code, is constitutional by reason of Section 20, Article II, of the Constitution, which provides that, "The General Assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers." This section was a part of the Constitution as enacted in 1851. Under the Constitution as it then stood councilmen's salaries were not provided for or fixed, but in its amendment by Section 3, of Article XVIII, in 1912, it is now provided that "municipalities shall have authority to exercise all powers of local self-government." And in view of the reasons herein previously set forth and the later constitutional amendment withholding the legislative hand from interference in matters purely of local self-government, we determine that the matter of a councilman's salary is now provided for in this Constitution by a recognition of the power in municipalities to exercise all powers of local self-government.

It is therefore the judgment of this court that the ordinance is valid and that Section 4209 of the General Code is unconstitutional and void, and the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

LEMERT, P. J., and MONTGOMERY, J., concur.