NORTHERN OHIO PATROLMEN'S BENEVOLENT ASSN. ET AL.,
APPELLEES, *v.* CITY OF PARMA ET AL., APPELLANTS.

[Cite as Benevolent Assn. v. Parma (1980),
61 Ohio St. 2d 375.]

(No. 79-369—Decided March 26, 1980.)

*Messrs. Climaco, Goldberg, Boukalik & Seminatore* and *Mr. Paul S. Lefkowitz,* for appellees.

*Mr. Andrew Boyko,* law director, and *Mr. Stephen P. Bond,* for appellants.

LOCHER, J.

*I.*

Appellants, in their first proposition of law, assert that R. C. 5923.05 and Parma ordinance No. 83-73 are not in conflict.

It is firmly established that legislative enactments, whether of a municipality or state, have a strong presumption of constitutionality. *Xenia* v. *Schmidt* (1920), 101 Ohio St. 437, paragraph one of the syllabus; *Chester Township* v. *Geauga Co. Budget Comm.* (1976), 48 Ohio St. 2d 372, 373; *State, ex rel. Taft,* v. *Campanella* (1977), 50 Ohio St. 2d 242, 246. Further, it is noted that, "when it is possible * * * to harmonize the general law and municipal ordinances, the same should be done." *Coshocton* v. *Saba* (1936), 55 Ohio App. 40, 43. However, such is not the case herein.

In the instant cause, R. C. 5923.05 mandates that the city pay each employee on military leave of absence his or her full salary for a maximum of 31 days every calendar year irrespective of any monetary compensation awarded to such employee from the military. The Parma ordinance provides that the city shall pay the employee only the difference between the employee's city salary and any monetary compensation from the military. In essence, under R. C. 5923.05, the employee would receive a full city salary plus a military salary, whereas, according to the ordinance, the employee receives only the equivalent of the city salary.

The statute and the ordinance seek to legislate on the same subject matter, the same individuals, and for the same period of time but at different rates of payment. The two enactments are in direct conflict.

In *Mullen* v. *Akron* (1962), 116 Ohio App. 417, the court, in ruling upon R. C. 5923.05 and a similarly enacted ordinance, determined that a clear conflict did exist. The court, in *Mullen,* stated, at page 419:

"It appears obvious that the city ordinance and the state law are in conflict in the matter of pay to the city employee-soldier; and our question reduced to its simplest terms is, Which one must be applied?"

Agreeing with the above, we find that R. C. 5923.05 and Parma ordinance No. 83-73 are in direct conflict and not

capable of a reasonable construction which will harmonize the two. Accordingly, appellants' first proposition of law is without merit.

## II.

Appellants, in their second proposition of law, assert that a non-chartered municipality has authority, pursuant to its Home Rule powers, to enact an ordinance which conflicts with the general laws of the state when the ordinance is limited to a matter of substantive local self-government, such as the wages to be paid to its employees.

It is axiomatic that an ordinance, similar to the one at bar, if enacted by a chartered municipality, would prevail over the state law irrespective of any conflict. *Mullen* v. *Akron, supra* (116 Ohio App. 417).

The critical issue to be determined is whether a non-chartered municipality has similar powers to enact an ordinance in matters of local self-government which are at variance with state law.

The Court of Appeals, relying on the decision in *Leavers* v. *Canton* (1964), 1 Ohio St. 2d 33, and to a lesser degree on *State, ex rel. Petit,* v. *Wagner* (1960), 170 Ohio St. 297, and *Vair* v. *Ravenna* (1972), 29 Ohio St. 2d 135, ruled that a non-chartered municipality may not enact an ordinance at variance with a state statute. For the reasons hereinafter more fully explained, we disagree with such a summary dismissal of appellants' claim. A non-chartered municipality may enact an ordinance which is at variance with state law in matters of substantive local self-government. Accordingly, Parma ordinance No. 83-73 is constitutional and valid.

A historical analysis of the constitutional Home Rule provisions is essential to determine the improper exodus of power from, and limitations imposed upon, Parma and all non-chartered municipalities in matters of substantive local self-government.

Prior to 1912, the thrust of municipal powers, with a few exceptions, was limited to a strict rule commonly referred to as the Dillon Rule. In essence, the Dillon Rule awarded the municipal corporations only such authority as expressly granted or clearly implied by the General Assembly and no

more. By 1912, local self-government interests pioneered the adoption of Article XVIII of the Ohio Constitution. The concept of Home Rule allows municipal corporations to become autonomous governmental units.[1]

The most relevant amendments and sections concerning the instant cause are Sections 2, 3 and 7 of Article XVIII of the Ohio Constitution. These sections read as follows:

Section 2:

"General laws shall be passed to provide for the incorporation and government of cities and villages; and additional laws may also be passed for the government of municipalities adopting the same***."

Section 3:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Section 7:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

Despite the intent to confer powers on municipalities over local affairs, this court, in *State, ex rel. Toledo,* v. *Lynch* (1913), 88 Ohio St. 71, interpreted the newly enacted amendments by determining that the adoption of a charter was a prerequisite for upholding a municipal ordinance which was at variance with a state statute.[2] This same inflexible approach requiring a

---

[1] The purpose of the Home Rule amendments was to put the conduct of municipal affairs in the hands of those who knew the needs of the community best, to-wit, the people of the city. *Goebel* v. *Cleveland Ry.* (1915), 17 Ohio N.P. (N.S.) 337, 343; *Billings* v. *Cleveland Ry.* (1915), 92 Ohio St. 478; *Froelich* v. *Cleveland* (1919), 99 Ohio St. 376, 385.

[2] Judge Wanamaker wrote a vigorous dissent, discussing the intent of the 1912 constitutional convention, which was to grant municipalities, chartered and non-chartered, greater latitude in matters of local concern. He emphatically stated, at page 134:

"The constitutional convention, with great unanimity, in substance and effect declared that *'municipalities are and of right ought to be free and independent in their municipal affairs.'* [Emphasis *sic.*]

"That this was their paramount and patriotic purpose there can be no doubt.

municipality to adopt a charter if it desires to have control over local affairs is the same rationale espoused in *Leavers, supra,* which, as noted previously, is the controlling case for the Court of Appeals' determination that the Parma ordinance is invalid.

Within ten years of the *Lynch* decision, this court, in *Perrysburg* v. *Ridgway* (1923), 108 Ohio St. 245, specifically rejected its holding in *Lynch, supra,* and held that powers of local self-government do not automatically require a charter. Judge Wanamaker, who wrote a vigorous dissent in *Lynch, supra,* now writing for the majority in *Perrysburg,* at pages 252-253, 255, stated, in pertinent part:

"The holding of the court in the *Lynch case, supra,* is mere dictum, and there is absolutely nothing in the language of Section 7, or any other section of Article XVIII, that supports such a holding, and there has been no express reaffirmation of this doctrine since the decision of the *Lynch case;* but, to the contrary, many other cases have been decided wherein municipal power authorized by the Constitution has been recognized in the municipalities of Ohio which have not adopted a charter.* * *

"* * *

"But what is a city charter but a city constitution, and a city constitution can in no wise enlarge the municipal power granted in the state Constitution. After all, it only distributes that power to the different agencies of government, and in that distribution may place such limitation, but not enlargement, upon that power, as the people of the municipality may see fit in such charter or constitution. The city charter in no wise affecting the degree of municipal power of the state Con-

"Did they accomplish that purpose for home rule, or shall it turn out at the last, by judicial interpretation, that this boasted independence and home rule is just no independence at all, and that the municipalities are still as hopelessly servile and subject to legislative control as ever, save and except that they may escape from further legislative interference or obstruction in the possibility of agreeing on some new charter for the village or city?

"* * * .

"Is it possible that this home-rule amendment, so widely advertised through the constitutional convention and the campaigns that followed as a panacea for municipal ills, is, as a former statesman a half century ago declared, just a 'barren ideality' as to all villages and cities that are unwilling or unable to adopt a new form of government under a charter?"

stitution, its optional adoption under the language of the Constitution should in no wise affect the operation of Section 3, Article XVIII, which by the constitutional schedule was to go into effect November 15, 1912. Moreover, the language of Section 7 is merely 'may' adopt a charter.

"* * *

"Municipalities [before 1912] were, therefore, largely a political football for each succeeding Legislature, and there was neither stability of law, touching municipal power, nor sufficient elasticity of law to meet changed and changing municipal conditions. To the sovereign people of Ohio the municipalities appealed in the constitutional convention of 1912, and the Eighteenth Amendment, then known as the 'Home Rule' Amendment, was for the first time adopted as a part of the Constitution of Ohio, wherein the sovereign people of the state expressly delegated to the sovereign people of the municipalities of the state full and complete political power in all matters of 'local self-government.' "

After the *Perrysburg* decision, the advancement of the theory that municipal power was derived from Section 3 of Article XVIII of the Ohio Constitution and not from a charter was clearly established.[3] *State, ex rel. Arey,* v. *Sherrill* (1944), 142 Ohio St. 574; *Mansfield* v. *Endly* (1931), 38 Ohio App. 528; and *Hugger* v. *Ironton* (1947), 83 Ohio App. 21.

Then, in *Morris* v. *Roseman* (1954), 162 Ohio St. 447, this court added a new dimension to the analysis of the Home Rule concept. This court relied on Section 2, as well as Sections 3 and 7, of Article XVIII, in determining the extent of municipal power over matters of local self-government.

Section 2 specifically limits the state's control to matters of organization and procedure of government. Thus, the

---

[3] In Duffey, Non-Charter Municipalities: Local Self-Government, 21 Ohio St. L. J. 304, 314, it is stated:

"The interpretation of section 3 as of 1954 seemed clear: (1) While local police regulations were subject to statutory control under the conflict clause, the non-police powers were superior to conflicting state statutes unless state power was found in a specific constitutional provision; (2) section 3 was self-executing and applied to all municipalities, charter or non-charter; (3) *Since municipal power was derived directly from Section 3, the only significance of a charter in this respect was a) the ability to establish a form of government* and b) the ability to place limitations on section 3 powers by charter provision." (Emphasis added.)

limitation upon the General Assembly to matters of procedure or organization in Section 2, coupled with the direct grant of authority to municipalities in Section 3, both chartered and non-chartered, resulted in the *Morris, supra,* decision. The second paragraph of the syllabus, in *Morris,* reads as follows:

"An Ohio municipality which has not adopted a charter for its government, as authorized by Section 7, Article XVIII of the Constitution of Ohio, must, in the passage of the legislation, follow the *procedure* prescribed by the statutes enacted pursuant to the mandate of Section 2, Article XVIII of the Constitution." (Emphasis added.)

Subsequent to *Morris, supra,* it has become firmly established that non-chartered municipalities must only adhere to the state statutes in procedural matters of local self-government, pursuant to Section 2, Article XVIII of the Ohio Constitution. *Wintersville* v. *Argo Sales Co.* (1973), 35 Ohio St. 2d 148, and 1959 Ohio Atty. Gen. Ops. 518-519, No. 819.[4]

Oddly, the decisions of *State, ex rel. Petit,* v. *Wagner, supra* (170 Ohio St. 297), and *Leavers* v. *Canton, supra* (1 Ohio St. 2d 33), while not directly overruling *Morris, supra,* seem to lose the perspective of the *Perrysburg* decision and resort to the analysis of the discredited *Lynch, supra,* decision which mandates the necessity for a charter if a municipality desires to have any control in matters of local self-government where a state statute is at variance with the municipal ordinance.

As noted previously, subsequent to the *Petit* and *Leavers* aberrations, this court, in *Wintersville, supra,* specifically

---

[4] 1959 Ohio Atty. Gen. Ops. 518-519, No. 819, states:

"While it has been held that municipalities need not establish a charter in accordance with Section 7, Article XVIII of the Ohio Constitution to be vested with the substantive home rule powers of Section 3, Article XVIII of the Ohio Constitution (see *The Village of Perrysburg, et al.* v. *Ridgway, a taxpayer, et al.,* 108 Ohio St., 245) a non-charter city remains subject to the statutory provisions passed pursuant to Section 2, Article XVIII of the Ohio Constitution for the method to be used in exercising its power.

"* * * *

"Of prime importance in this passage [from *Morris* v. *Roseman,* 162 Ohio St. 447] are the expressions 'its organization and operation' and 'an orderly method for the exercise of such power.' Both these expressions clearly relate to the structural organization or the *form* of government of the municipality, and this language is in complete harmony with the view expressed in the *Perrysburg* case, *supra,* on the essential difference between charter and non-charter municipal corporations, and the application to them of enactments of the General Assembly."

reaffirmed the *Morris* rationale and again noted the procedural-substantive distinction in determining whether a non-chartered municipality may enact an ordinance at variance with a state statute.

By simply reaffirming the rationale espoused in *Morris* and *Wintersville*, the issue at bar is contingent upon whether the salaries paid to municipal employees is a matter of substantive or procedural local self-government.

"The mere fact that the exercise of a power of local self-government may happen to relate to the police department does not make it a police regulation within the meaning of the words 'police-regulations' found in Section 3 of Article XVIII of the Constitution." *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, paragraph five of the syllabus.[5]

It has been firmly established that the ability to determine the salaries paid to city employees is a fundamental power of local self-government. *State, ex rel. Mullin,* v. *Mansfield* (1971), 26 Ohio St. 2d 129, and *Mansfield* v. *Endly, supra* (38 Ohio App. 528). Thus, it is quite evident that the matter at bar concerns itself with substantive local self-government.

Appellees also assert that the statewide concern to maintain a strong military reserve gives the state the unfettered authority to create inducements, such as additional compensation, to members of the armed reserves.

We find it commendable to stimulate enlistment and maintenance in the armed reserves, but not at the expense of a municipality which must pay an entire salary for a 31-day period to an employee who is not performing any duties within the municipality. The state has many other viable alternatives to induce enlistment and maintenance of the armed reserves rather than further saddling the municipalities with an additional expense.

The state's concern in this matter is not sufficient to interfere with the municipalities' fiscal decision as to wages paid to its employees.

---

[5] The concept of statewide concern is not applicable in the instant cause, regardless of whether the city in question has adopted a charter. If the salaries paid to city employees who are in the armed forces reserve were considered a "statewide concern," the ordinance in *Mullen* v. *Akron, supra* (116 Ohio App. 417), would have been held invalid. Thus, there was no finding that R. C. 5923.05 is a matter of statewide concern.

The foregoing will give the full force and effect as was desired by the passage of Section 3, Article XVIII of the Ohio Constitution.[6] Thus, this court finds that Parma ordinance No. 83-73 is valid. Accordingly, appellants' second proposition of law is meritorious.

### III.

In their third proposition of law, appellants state:

"A statute which does or does not impose a financial burden upon a municipal corporation and its taxpayer-citizens solely on the basis of whether or not that municipal corporation is governed under a charter does so without any rational basis and thereby deprives the municipality and its taxpayer-citizens of equal protection of the laws."

Appellants, in this proposition, raise an allegation of error not presented in the court below. In *State* v. *Williams* (1977), 51 Ohio St. 2d 112, this court reaffirmed, in paragraph two of the syllabus, its adherence to the well-established law that:

"The Supreme Court will not ordinarily consider a claim of error that was not raised in any way in the Court of Appeals and was not considered or decided by that court. (*Toledo* v. *Reasonover*, 5 Ohio St. 2d 22, approved and followed.)"

Accordingly, appellants' third proposition of law is rejected.

Therefore, for the reasons more fully explained in appellants' proposition of law No. 2, we hold that Parma or-

---

[6] Judge Wanamaker's closing comments, in his dissenting opinion in *Lynch, supra* (88 Ohio St. 71, 125), succinctly, but aptly, noted the need for allowing all municipalities, chartered and non-chartered alike, control over substantive matters of local self-government, consistent with the opinion herein.

The judge states, in *Lynch*, at page 150, that:

"Constitutional provisions are too often devitalized in the name of judicial construction. They are too often bled to death and nullified by judicial order and decree. Of what avail is the legislative or constitutional act if the teeth be all pulled out of it by judicial interpretation? The doctrine announced in the case at bar has not yet become the settled law of the state of Ohio. I have discussed this question at so great length, because I still indulge the hope that this court, with the aid of an enlightened public opinion, may finally settle the law along the lines of old landmarks, that all political power is inherent in the people and should be exercised by all branches of the government, not to destroy, but to defend, the people's rights and protect the people's powers."

dinance No. 83-73 is constitutional and valid. The judgment of the Court of Appeals is, therefore, reversed.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY and HOLMES, JJ., concur.

P. BROWN, J., concurs in the judgment only.

HERBERT, J., concurs in paragraph one of the syllabus but dissents from paragraph two of the syllabus and the judgment.

PAUL W. BROWN, J., concurring in the judgment.

I consider that there is no conflict between the ordinance and the statute which requires this court to reconsider any of our prior cases having to do with home rule.

HERBERT, J., concurring in paragraph one of the syllabus, and dissenting from paragraph two of the syllabus and the judgment. I do not agree that the cases of *State, ex rel. Petit,* v. *Wagner* (1960), 170 Ohio St. 297, 164 N.E. 2d 574, and *Leavers* v. *Canton* (1964), 1 Ohio St. 2d 33, 203 N.E. 2d 354, represent "aberrations," as found by the majority. The opinions in both cases were unanimously approved by the menbers of the court. On the other hand, the cases of *Perrysburg* v. *Ridgway* (1923), 108 Ohio St. 245, 140 N.E. 595, and *Wintersville* v. *Argo Sales Co.* (1973), 35 Ohio St. 2d 148, 299 N.E. 2d 269, relied upon by the majority, were supported by only four members of the court, and multiple dissenting opinions were written in each case. Furthermore, *Morris* v. *Roseman* (1954), 162 Ohio St. 447, 123 N.E. 2d 419, did no more than dispose of the question posed in that case. In fact, the dissent of Chief Justice Weygandt, read in light of Judge Zimmerman's majority opinion, leaves little doubt that the rule in *Wagner* was being deliberately telegraphed. See, also, *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, 151 N.E. 2d 722.

The majority seeks to rely upon *Perrysburg,* which does not require the result announced here. The opinion of the late Chief Justice O'Neill in *Leavers* explains the then-pertinent cases clearly, including *Perrysburg;* and *Wintersville* (like *Morris*) stands only for the propositions set forth in the syllabus.

For many years following the constitutional changes adopted in 1912, this area of the law was subject to question. See *State, ex rel. Lynch,* v. *Cleveland* (1956), 164 Ohio St. 437, 132 N.E. 2d 118. Since *Wagner* and *Leavers,* it has been stable and understood by all.

I doubt that the *Leavers* rule was adopted by the court out of any particular passion for its result, although it does serve the orderly process of government where non-charter municipalities are concerned. Rather, as indicated by the late Chief Justice Taft in his concurring opinion in *Leavers,* the court simply found that this is what the Constitution requires.

I regret that the whole matter is to be subjected to a resurgence of doubt and litigation, this time confounded by the necessity to distinguish between procedural and substantive legislation, and confused by the fact that the majority does not specifically overrule *Wagner* and *Leavers.* The judgment of the Court of Appeals should be affirmed.