VILLAGE OF BELLVILLE ET AL.,
APPELLANTS, *v.*
BEAL ET AL., APPELLEES.

(No. CA-2062—Decided August 3, 1982.)

*Mr. William J. Brown,* attorney general, *Mr. Arthur G. Meyer* and *Mr. Jeffrey J. Jurca,* for appellants.

*Mr. William Travis McIntyre,* for appellees.

PUTMAN, J. In this case involving a question of the scope of the constitutional home rule power of a municipal corporation (the village of Bellville), we affirm the judgment of the trial court, the Court of Common Pleas of Richland County, because, in our opinion, the court correctly perceived and applied the law as laid down to us in the recent decision of the Ohio Supreme Court in the case of the *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375 [15 O.O.3d 450].

In the case at bar, the Council of the village of Bellville enacted Ordinance No. 19-74 which increased the compensation of the members of the Bellville Village Council from ten dollars per meeting to twenty dollars per meeting. On October 1, 1976, councilmen Beal, Mclarren and Roberts received the increased compensation for attending council meetings, their terms having begun January 1, 1974, and having continued through the calendar years 1974, 1975, 1976 and 1977.

It is stipulated that as a result of twenty-eight meetings attended, each of the three received increased compensation during his term in accordance with the ordinance passed during his term in the amount of $280 each.

Among other things, it is stipulated that defendant Frontz, as a member of the Bellville Village Board of Public Affairs, received enhanced compensation for twenty-nine meetings in the amount of $290, his term being for the same four-year period.

It is further stipulated that the Auditor of State made a finding for recovery against the individuals named in the above amount and that, pursuant to R.C. 117.10, the Attorney General of Ohio brought an action in the court of common pleas to recover this money.

The parties further stipulate that Ordinance No. 19-74 of the village and another Ordinance No. 28-1975 involving the same problem each conflict with the provisions of R.C. 731.13.

We set forth the provisions of Section 2, Article XVIII and Section 3, Article XVIII of the Ohio Constitution. They read as follows:

Section 2 (general and additional laws):

"General laws shall be passed to provide for the incorporation and government of cities and villages; and additional laws may also be passed for the government of municipalities adopting the same; but no such additional law shall become operative in any municipality until it shall have been submitted to the electors thereof, and affirmed by a majority of

those voting thereon, under regulations to be established by law."

Section 3 (powers):

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The statute enacted by the General Assembly claimed to operate in this case is R.C. 731.13. It reads as follows:

"The legislative authority of a village shall fix the compensation and bonds of all officers, clerks, and employees of the village except as otherwise provided by law. The legislative authority shall, in the case of electing officers, fix their compensation for the ensuing term of office at a meeting held not later than five days prior to the last day fixed by law for filing as a candidate for such office. All bonds shall be made with sureties subject to the approval of the mayor. The compensation so fixed shall not be increased or diminished during the term for which any officer, clerk, or employee is elected or appointed."

It is now clear as a matter of law under the decision of the Ohio Supreme Court in the *Parma* case quoted above that although municipal corporations are bound by acts of the General Assembly spelling out the procedure by which they must go about the enactment of ordinances (such as, by way of illustration but not limitation, three separate readings unless the rule is dispensed with by a three-quarters vote, publication, signature of the mayor), municipal corporations are not bound by any state statute in respect of the prescribing of the rules for the conduct of human beings contained in those ordinances. Hence the expression of the concepts "procedural" versus "substantive."

"Procedure" relating to how to proceed to enact ordinances, and "substantive" meaning the substance of the rules by which human beings are to govern their conduct in accordance with the ordinance after it is "enacted" in accordance with the statutes in question.

The Ohio Constitution authorizes the General Assembly to control the municipal corporation in how it proceeds to "enact" the ordinances but it cannot control the people of the municipal corporation in their choice of the rule of conduct for the lives of human beings provided for in the ordinances thus "enacted."

It is not necessary for us to restate (in the manner of a law review article) all of the Supreme Court cases which that court reviewed in the *Parma* case above cited, for the reason that they appear in that opinion and we feel the trial court correctly perceived the *Parma* case to control.

We recognize that the Attorney General and the Auditor properly brought this action to clarify a point of law of public concern which they find to confront them in the regular exercise of their duties.

In our view, the issue for us to decide is to what extent are the people of Bellville free to govern themselves, make their own choices, by acting through their duly elected representatives and to what extent are they on the other hand precluded from freedom of choice by the enactment of the General Assembly.

We do not consider that we have before us for decision the wisdom of "interm pay raises" for the individuals involved. That is to say the question of whether it was a bad idea or a good idea to enact the ordinance in question is not before us. The question before us is whether the people of Bellville, acting through their elected representatives, are free to adopt this ordinance or not.

We point out to those interested in municipal affairs and charter government particularly, that they are free to stop the enactment of such ordinances by the adoption of an appropriate charter provision should they consider it wise to do so.

We emphasize that the question

before us is: "who shall make the decision?" not what decision shall be made.

The 1912 adoption of the home rule provisions of the Ohio Constitution coincided with the history of the great national "sweep" of the then denominated "liberal" governmental reforms which, in those days, meant a return of power to the individual citizen in the manner of the colonial "town meeting." It was in the same year that the constitutional amendment respecting workers' compensation was adopted. Other innovations included initiative and referendum, direct election by popular vote of party nominees, popular recall of public officers and in some states, voter recall of individual judicial decisions. Provisions for direct voter control of government accompanied by those implementing the philosophy that local problems should be handled locally by local people, swept the nation and were embodied into the constitutional fabric of many states. Ohio was such a state.

Since 1912, the battleground over local control versus control in Columbus has been peppered with many legal skirmishes and frequently, as in this case, the issue of local control versus state control has been obscured by emotional debate over the wisdom of the choice of the rule of law enacted. In reality the issue before the Supreme Court was always the greater issue over whether the decision should be made in the local council chambers or in the legislative halls of Columbus.

We would like to make it clear that we are not passing upon the merits of "in-term pay raises." In the same manner, the Supreme Court of Ohio in the *Parma* case was not passing upon the wisdom of the choice of the city of Parma to pay its employees while on active military duty only the difference, if any, between their city pay and their military pay. (The statute obligated the city to continue full city pay to the employee in addition to his full military pay.)

It is perhaps significant that the majority Ohio Supreme Court opinion in the city of Parma case cited above was written by Justice Ralph S. Locher whose fame as an expert in municipal law preceded his election to the Ohio Supreme Court.

Interested observers of the struggle for home rule for municipalities recall his substantial contribution thereto as law director and thereafter mayor of the municipality which (as a consequence of the increase in home rule power) is referred to with affectionate good humor in some legal circles as "the State of Cleveland."

It is noteworthy, it seems to us, that the sole dissenting opinion in *Parma, supra,* pointed out its departure from the more restrictive (on municipalities' home rule powers) rule of the case of *Leavers* v. *Canton* (1964), 1 Ohio St. 2d 33 [30 O.O.2d 19]. The opinion in *Leavers, supra,* was authored by the respected late Chief Justice C. William O'Neill, whose expertise in government law developed through service as a State Legislator, Speaker of the House of Representatives in the state legislature, Attorney General of Ohio and then Governor.

The point of all this is to highlight the importance of the "home rule for municipalities" issue which this case presents, for upon that solitary issue our decision turns. In that connection, it is to be observed that the Auditor and the Attorney General of Ohio have, in bringing this action, contributed to a greater public understanding of the law.

But the law which has been developing over the past seventy years since the adoption of the constitutional grant of home rule power to municipalities has to do with "who has the power to decide" and as to that issue it is totally irrelevant whether "in-term pay raises" are "wise or unwise" or "just or unjust" or whether the sum of ten dollars per meeting is worth the expense of the lawsuit.

In the *Parma* case, the state required

the city of Parma to pay more to its employees called to active service with the federal military reserves than the municipal ordinance authorized them to be paid. It was necessary to separate the issue of "home rule for municipalities" from the emotional considerations of compensation for workers and emotional affinity for those willing to volunteer for military service.

As Judge William F. McKee observed in speaking for this court of appeals in upholding the power of the city of Coshocton totally to abolish its police department free from restraint by the General Assembly in *State, ex rel. Civil Serv. Emp. Assn., v. Coshocton* (1982), 5 Ohio App. 3d 5, the judicial function respecting municipal councils is not to decide what is wise policy for a council to adopt but only what is lawful for it to adopt.

In sum, the issue deals with the struggle of local municipalities to be "cleft from the clutches of Columbus" and deals with whether or not we are so close to George Orwell's "1984" that each little Ohio village needs to have its "governmental diapers changed" and its "political nose blown" by "big brother" in Columbus or whether the people of those municipalities are to be afforded the presumption of sufficient political maturity that they may say with authority, "Please Dad, I'd rather do it myself!"

It is our judgment that our Supreme Court, speaking through Justice Locher, answered that question in the *Parma* case clearly and with an authority by which the trial judge correctly perceived himself to be bound.

In like manner, we consider it to be our responsibility to "salute and follow orders."

Having disposed of this case squarely upon the merits, we decline further to comment upon the other interesting procedural aspects of this case which might have justified an affirmance without deciding the constitutional issue. The judgment of the trial court is affirmed.

*Judgment affirmed.*

HENDERSON, P.J., and MILLIGAN, J., concur.