[Cite as *State v. Carlson*, 2023-Ohio-3514.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 22CA0015-M |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| DONNA DROCKTON CARLSON | WADSWORTH MUNICIPAL COURT |
| | COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 21CRB00414-A |

DECISION AND JOURNAL ENTRY

Dated: September 29, 2023

SUTTON, Presiding Judge.

{¶1} Defendant-Appellant, Donna Drockton Carlson, appeals the judgment of the Wadsworth Municipal Court. This Court reverses.

I.

**Relevant Background**

{¶2} Ms. Carlson, a resident of the Village of Seville, owns five ducks and three dogs. On June 28, 2021, Ms. Carlson received a correspondence from Kevin Bittaker, a former zoning inspector employed by the Village, informing her the Village received a complaint regarding the ducks on her property and she is in violation of Seville Village Zoning Ordinance 409.14 which prohibits "poultry or livestock" from being "kept on land within the Village." The correspondence defined "poultry" as "a domesticated bird raised generally for meat or eggs." The correspondence also stated Ms. Carlson must remove the ducks within 30 days of June 28, 2021.

{¶3} In response, Ms. Carlson spoke with Mr. Bittaker and attended the Village's July 26, 2021 Planning and Zoning Commission meeting. At the meeting, Ms. Carlson asked the commission to recommend a change to the zoning code as it relates to her ducks. The commission, however, voted against recommending a change to the zoning code.

{¶4} The Village filed a complaint against Ms. Carlson, in Wadsworth Municipal Court, for keeping the ducks in violation of the ordinance. Ms. Carlson filed a motion to dismiss arguing Ordinance 409.14 is unconstitutionally void for vagueness in light of the facts presented in this situation. The trial court denied Ms. Carlson's motion and commenced a bench trial on the matter. At the conclusion of trial, Ms. Carlson was found guilty of violating the ordinance and was sentenced to pay court costs and remove the ducks from her property within 30 days. The trial court stayed Ms. Carlson's sentence to allow her to file an appeal.

{¶5} Ms. Carlson timely appealed and raises one assignment of error for our review.

## II.

### ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN ITS DENIAL OF THE MOTION TO DISMISS THAT WAS FILED ON THE BASIS THAT SEVILLE VILLAGE ORDINANCE 409.14 IS UNCONSTITUTIONAL IN THAT IT IS VOID FOR VAGUENESS.**

{¶6} "[L]egislative enactments, whether of a municipality or state, have a strong presumption of constitutionality." *N. Ohio Patrolmen's Benev. Assn v. City of Parma*, 61 Ohio St.2d 375, 377 (1980). "The party alleging that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail." *State v. Anderson*, 57 Ohio St.3d 168, 171 (1991). "Under the basic principles of due process, a statute is void for vagueness if its prohibitions are not clearly defined." *State v. Stallings*, 9th Dist. Summit No. 20987, 2002-Ohio-5942, ¶ 12, citing *Grayned v. Rockford*, 408 U.S. 104, 108 (1972). "Further, a statute is void for

vagueness if its terms invite arbitrary or discriminatory enforcement." *Stallings* at ¶ 12, citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "However, a statute does not need to avoid all vagueness." *Stallings* at ¶ 12; *see Grayned* at 110. "Therefore, a statute will not be deemed void for vagueness if individuals of ordinary intelligence could comprehend it to the extent that it would fairly inform them as to the generally prohibited conduct." *Stallings* at ¶ 11; *see also Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973); *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). *See also Colten v. Kentucky*, 407 U.S. 104, 110 (1972).

{¶7}   In *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, the Supreme Court of Ohio stated:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to police officers, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

> When a statute is challenged under the due-process doctrine prohibiting vagueness, the court must determine whether the enactment (1) provides sufficient notice of its proscriptions to facilitate compliance by persons of ordinary intelligence and (2) is specific enough to prevent official arbitrariness or discrimination in its enforcement. The determination of whether a statute is impermissibly imprecise, indefinite, or incomprehensible, *must be made in light of the facts presented in the given case and the nature of the enactment challenged*.

(Emphasis added.) (Internal quotations and citations omitted.)

{¶8}   Ms. Carlson argues, as she did below, Seville Village Zoning Ordinance 409.14 is void for vagueness, in light of the facts presented in this case, because "poultry" is not a scientific name that has one meaning. According to Ms. Carlson, an ordinary citizen would associate "poultry" with agriculture, farming, and/or grocery store products. Ms. Carlson indicates the

Village's zoning code does not contain a definition section wherein the word "poultry" is defined to assist Village citizens. Ms. Carlson also argues Seville Village Zoning Ordinance 409.14 is void for vagueness because the ordinance is applied in an arbitrary, capricious and generally discriminatory manner by Village officials. Ms. Carlson indicates Mr. Bittaker seeking the Village solicitor's legal advice to obtain an "ex post facto" definition of "poultry," for the purpose of prosecuting her regarding the ownership of ducks, demonstrates an arbitrary, capricious, and discriminatory practice.

{¶9} For purposes of our review, we now turn to the language of Seville Village Zoning Ordinance 409.14. Under the heading, "*Nuisances, Unsafe and Substandard Buildings and/ or Structures*," Seville Village Zoning Ordinance 409.14 states:

(A) *No poultry or livestock* is to be kept on land within the Village except as follows:

(1) Upon receipt of a zoning permit, not more than *6 Hens* (Gallus Domesticus) may be kept upon lots within all zones of the Village for personal use. *Neither Hens nor their products may be sold within the Village.*

(2) *Roosters* shall not be permitted with[in] the Village.

(3) *Hens* shall at all times be kept in sanitary pens or coops which provide humane, sanitary and inoffensive quarters for such Hens.

(4) Pens or coops are only permitted in rear or side yards no less than 10 feet from the rear or side lot line, and 15 feet from the dwelling on said lot.

(5) Pens or coops may not cover an area greater than 48 square feet.

(6) Pens or coops must not be visible from the public street on which the property fronts, and must be screened from abutting properties with landscaping, fencing, and /or a wall not to exceed 6 feet in height.

(7) No nuisances or unsightly objects shall be permitted, erected or placed or allowed to remain on any property within the Village, nor shall any property be used in any way or for any purpose that may endanger the health or unreasonably disturb the peace and quiet of adjoining premises.

(Emphasis added.)

## Fair Warning to Ordinary Citizen

{¶10} We must first determine whether Seville Village Zoning Ordinance 409.14 provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he or she may act accordingly. "When construing the relevant provisions of a statute, this [C]ourt strives to ascertain and effectuate the legislature's intent." *Stallings* at ¶ 15. "As the statutory language provides the most reliable indicator of that intent, we turn to the words themselves." *Id*. Additionally, "[w]hen a term is not defined by statute, it is accorded its common, ordinary meaning." *Id*. Indeed, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." *Id*. quoting R.C. 1.42.

{¶11} According to Merriam-Webster.com, poultry is defined as "domesticated birds kept for eggs or meat." Further, the Cambridge English dictionary defines poultry as "the meat from birds such as chickens[;]" "birds, such as chickens, kept for their meat or eggs[;]" and "birds, such as chickens, that are bred for their eggs and meat[.]" *See* https://dictionary.cambridge.org/us/dictionary/english/poultry. Additionally, the United States Department of Agriculture explains:

> Poultry is any domesticated bird used for food. Varieties include chicken, turkey, goose, duck, Rock Cornish hens, and game birds such as pheasant, squab and guinea fowl. Also included are huge birds such as ostrich, emu and rhea (ratites).

*See* ask.usda.gov/s/article/What-is-poultry.

{¶12} In considering the Village's intent in passing Seville Village Zoning Ordinance 409.14, it is clear the ordinance is meant to regulate certain nuisances and control noise, sanitation, unsightly coops, and the sale of meat or animal products from poultry or livestock. The ordinance specifically mentions hens and roosters, but does not overtly prohibit ownership of ducks. Further, the essence of the word poultry, even in definitions which include ducks or other types of

domesticated birds, is grounded in individuals keeping these birds for their by-products, such as eggs, meat, or feathers.

{¶13} Ms. Carlson, however, specifically testified the ducks are her "pets[,]" and she researched the best type of duck to serve her needs. Ms. Carlson indicated she puts diapers on her ducks and brings them into her home, stating: "I have two German Shepherds and a small dog, and we are all one big family." Ms. Carlson further testified she can no longer travel, drive long distances, or work, so she purchased her property as a "refuge" free from stress. Moreover, Ms. Carlson explicitly denied utilizing her ducks for their meat, eggs, or feathers, and admitted she did not "even know ducks produced eggs until [her] ducks laid an egg." Ms. Carlson described her ducks as being loving and stated:

> Oh, they are uplifting for me. I lost everything when I was injured and, again, my animals bring me so much joy and so much peace. I love them dearly and I can't imagine not having them or what would happen to them if I have to get rid of them.

Ms. Carlson raises her ducks for "love and companionship."

{¶14} As previously indicated, Seville Village Zoning Ordinance 409.14 is found in the zoning code under the heading: "Nuisances, Unsafe and Substandard Buildings and/ or Structures." The ordinance discusses, in detail, obtaining a permit for a maximum of six hens and completely bans roosters. Further, the ordinance prohibits the sale of eggs or hens in the Village. The ordinance further attempts to regulate the sanitation and appearance of chicken coops by specifying their allowable dimensions and placement on a person's property. Plainly, there is no mention of the word "duck" in the ordinance. While the Village contends "poultry" includes "duck," the ordinance as a whole would not lead a person of ordinary intelligence to reach that conclusion. The ordinance specifically references hens and roosters, and attempts to regulate the hygiene and sightliness of coops and the sale of any by-products such as meat and eggs. Based

upon the common understanding of "poultry" as birds kept for meat and eggs, and the intent of the Village to regulate these types of activities, Ms. Carlson is not unreasonable in believing that having pet ducks for pure companionship purposes, without consuming or selling their meat, eggs, or feathers, would violate the Village's zoning ordinance. Therefore, Ms. Carlson was not fairly warned she was committing an unclassified misdemeanor by owning pet ducks.

## Arbitrary or Discriminatory Enforcement

{¶15}   At trial, Mr. Bittaker admitted obtaining the definition of "poultry" for the June 28, 2021 correspondence to Ms. Carlson from the Village solicitor.  In the correspondence, the Village solicitor defined "poultry" as "a domesticated bird raised generally for meat or eggs."  Further, the correspondence indicated, "[a]s you are raising ducks and the ducks are not wild (which would be fowl), ducks are poultry and are not permitted under the code."  Importantly, the Village solicitor's definition of poultry is not found anywhere in the Village's zoning code, nor is there any identified distinction between fowl and poultry.  Mr. Bittaker's action, in seeking a definition of poultry from the Village solicitor, indicates the Village has not adopted a firm definition of "poultry" in the zoning code.  Mr. Bittaker sought this particular definition of poultry from the Village solicitor because the Village received a complaint regarding Ms. Carlson's ducks.  Allowing the Village to use the Village solicitor's personal definition of poultry to prosecute Ms. Carlson, which was specifically created in an attempt to remove Ms. Carlson's ducks from the Village and is not set forth in the Village's zoning code, is arbitrary by its very nature.

{¶16}   For the foregoing reasons, the prohibition as to "poultry" in Seville Village Zoning Ordinance 409.14 is unconstitutionally void for vagueness because, as indicated above, the word "poultry," without further definition, is vague in all of its applications.  *See State v. Anderson*, 57

Ohio St. 3d 168, 174 (1991). As such, the complaint against Ms. Carlson for violating Seville Village Zoning Ordinance 409.14 by owning pet ducks should be dismissed.

{¶17} Accordingly, Ms. Carlson's assignment of error is sustained.

III.

{¶18} For the reasons stated above, Ms. Carlson's assignment of error is sustained. The judgment of the Wadsworth Municipal Court is reversed and this cause is remanded for further proceedings consistent with this decision.

Judgment reversed;
cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

JOHN C. OBERHOLZTER, Attorney at Law, for Appellant.

KRISTOPHER IMMEL, Attorney at Law, for Appellee.