7 N.J. Super. 5 (1950)
71 A.2d 651
LYMAN L. PARKS, PLAINTIFF-RESPONDENT,
v.
THE UNION COUNTY PARK COMMISSION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1950.
Decided February 27, 1950.
*6 Before Judges COLIE, EASTWOOD and JAYNE.
*7 Mr. Harry V. Osborne, Jr., argued the cause for the plaintiff-respondent (Messrs. Osborne, Cornish & Scheck, attorneys).
Mr. David Armstrong, attorney for and of counsel with defendant-appellant, argued the cause.
The opinion of the court was delivered by EASTWOOD, J.A.D.
Plaintiff, Lyman L. Parks, Chief of the Union County Park Police, was awarded a summary judgment by the Union County Court, Law Division, in the sum of $320.01, representing his salary and bonus for the period from July 25, 1948, to August 18, 1948, while on leave of absence to engage in field training with the Organized Reserve Corps of the Army of the United States. From that judgment defendant appeals.
Plaintiff asserts and defendant denies that defendant is an agency of the County of Union; that by virtue of R.S. 38:23-1 plaintiff was entitled to be paid in full for the period of his absence from his duties as Chief of Police while he participated in field training as a member of the Organized Reserve Corps of the Army of the United States, for which he was paid a sum in excess of his wages and bonus.
R.S. 38:23-1, around which the controversy centers, provides as follows:
"An officer or employee of the state or a county or municipality, who is a member of the organized reserve of the army of the United States, United States naval reserve force and United States marines corps reserve, or other organization affiliated therewith, shall be entitled to leave of absence from his respective duty without loss of pay or time on all days on which he shall be engaged in field training. Such leave of absence shall be in addition to the regular vacation allowed such employee."
It is conceded by the parties that the Park Commission was established under authority of R.S. 40:37-96 et seq. A careful scrutiny of the statutory provisions convinces us that the Union County Park Commission is an agency of the county. Its creation, structure, purpose and operation *8 manifestly support our conclusion. The first step in the creation of a park commission is initiated by the county board of freeholders, as a result of which the question of its establishment is subject to a referendum of the voters; if created, the cost of its operation is borne by local taxation; the money essential for its operation is requested in writing by the park commission to the board of freeholders, who, "* * * after a public hearing on said request, and after determining in their discretion that funds for the maintenance of said county park system are necessary, may hereafter annually appropriate funds for the maintenance of said county park system; * * *" R.S. 40:37-101.1; that the funds, after they "shall have been raised and appropriated, shall be paid over to and expended by the said park commission of said county for the maintenance of said county park system in the same manner as any other department of government of said county." R.S. 40:37-101.2; that "The commission may acquire in its corporate name, for the benefit of the county, by purchase, gift, devise or eminent domain, any real estate or right or interest therein within the county * * *" R.S. 40:37-104; "To meet the expenses incurred under the provisions of sections 40:37-96 to 40:37-174 of this title in addition to the sum of money received from benefit assessments as herein provided and otherwise, the board of chosen freeholders of the county shall from time to time, on the requisition of the park commission, borrow money in the name and on the credit of the county, by issuing bonds of the county to a sum in the aggregate not exceeding two million five hundred thousand dollars." R.S. 40:37-129; the interest and principal of all such bonds "* * * shall be the debt or obligation of the county wherein they are issued, and the payment thereof shall be provided for by taxation in the same manner as other debts and obligations of the county." R.S. 40:37-131. It is readily discernible from the foregoing statutory powers vested in the County Park Commission that it is an instrumentality which is undeniably an adjunct of the county government; that it is established for the beautification and resulting *9 attractiveness of the county and for the benefit of all of the residents; that the cost of its acquisition, operation and maintenance becomes the burden and responsibility of all of the taxpayers of the county. As stated in Glick v. Trustees of Free Public Library, 2 N.J. 579 (1949), at pp. 583, 584:
"* * * It is an agency of the municipality notwithstanding its incorporation as a body politic. That in itself does not give rise to a relationship radically different in character from that which would otherwise exist. It is that substance and not the form of the creation that is the key to the legislative design."
Cf. Trustees v. Civil Service Commission, 83 N.J.L. 196 (Sup. Ct. 1912); affirmed, 86 N.J.L. 307 (E. & A. 1914). It necessarily follows that plaintiff is an employee of Union County.
The defendant contends that the section of the statute under which plaintiff's action is brought is limited in its operation by R.S. 38:23-3, which provides, inter alia:
"No greater portion of the salary or compensation of a commissioned officer as an employee of a department of the state or municipal government shall be paid to him under this section than will, when added to his salary as such commissioned officer, equal the amount paid to him by the state or municipal department before entering the military or naval service."
It is apparent that R.S. 38:23-1, under which an employee "who is a member of the organized reserve * * * shall be engaged in field training," applies specifically to situations that arise during "peace time." On the other hand, R.S. 38:23-3 is invocable, in the discretion of the employer, in situations where employees "are engaged in a branch of the military or naval service of the national government or of this state" in time of war or national emergency  a duty of a more permanent character, entirely unrelated to a peace time training program. It is significant that R.S. 38:23-3 was enacted in 1918 (P.L. 1918, c. 16), while we were engaged in World War I, and R.S. 38:23-1 was adopted in 1931 (P.L. 1931, c. 347), during a peace time period. The similarity between R.S. 38:23-1, applicable to Federal *10 Reservists, and R.S. 38:12-4, which is applicable to State Reservists, and the similarity between R.S. 38:23-3 and R.S. 38:12-5 is quite significant. Adams v. Atlantic County, 137 N.J.L. 648 (E. & A. 1948), involved a salary differential under R.S. 38:12-5 and the court there reiterated the necessity that the employee not only be a member of the designated service, but that he be on active duty with the armed forces of the United States. This distinction between regular, active, full-time duty with a permanent force and field training with a reserve force is a significant difference and we find R.S. 38:23-3 inapplicable under the circumstances here.
We believe that the comparison of the aforementioned statutes indicates that the legislative intendment of R.S. 38:23-1 was to engender on the part of trained military personnel an incentive to retain their interest and skills in military affairs at a high degree of efficiency through the reserve organization training program, with a minimum of sacrifice to them and to provide additional compensation for their service. Under the provisions of this statute, members of reserve organizations of the United States armed forces are entitled to a leave of absence from their duties as employees of the State, county or municipality "without loss of pay or time" while engaged in field training. Furthermore, "such leave of absence shall be in addition to the regular vacation allowed such employee." When the Legislature used the phrase "without loss of pay or time," we think it intended that the employee should not, during such absence, lose his employment compensation or any part thereof, regardless of the amount of his compensation from the United States Government; and, in addition thereto, that the legislative intent in including the word "time" was to protect employees in the Organized Reserve from losing any benefit that they might acquire by length of service in a given employment. If the contention of the defendant were adopted, the end result would be that the employee would lose his employment pay, or a part thereof, depending upon the amount of compensation from the Federal Government. To reach such a *11 conclusion, one would have to resort to a strained construction of the language in question, the effect of which would result in an unwarranted distortion of the legislative purpose. This statutory provision, we construe to be an inducement to the reservists to keep current his special talents to preserve our potential military might and to insure him against loss of benefits, opportunity or compensation while on leave from his duties with the State, county or municipality to engage in the regular field training program.
To ascertain the purpose of a legislative enactment, Mr. Justice Heher, speaking for the Supreme Court in Hackensack Water Co. v. Ruta, 3 N.J. 139 (1949), at p. 147, states the applicable rule:
"We gather the sense of a law from its object and the nature of the subject matter and the whole of the context and the acts in pari materia. The parts of a statute are to be viewed in relation to the whole, and the motive which led to the making of the law, and reconciled, if possible, to carry out the reasonably probable legislative policy. The general intention of the act controls the interpretation of its parts. * * *"
Defendant contends:
"* * * To construe the statute narrowly to mean that the plaintiff shall receive two pays is a far cry from doing exact justice between plaintiff and defendant and strains the language of the statute to permit totally unjustified raids on the public treasury. What more can a public employee ask than that he be made whole in performing this peace time service to his country which he undertakes voluntarily without any compulsion on the part of the Federal government and which finds him with more money in his pocket at the end of the service than he would have if he had continued in his civilian service?"
Under the factual situation here, if the defendant's contention is upheld, it would be a profitable result for it. The record reveals that no extra man was engaged to perform the duties of the plaintiff during his absence, but his duties were taken over by another member of the police force without the expenditure of any additional money. It is conceivable, of course, that the park commission or other state, county or *12 municipal departments might be required to pay out substantial sums to those entitled to leaves of absence under R.S. 38:23-1 without loss of pay during similar periods of military training. However, the remedy for such a situation, if one there should be, is legislative action and not judicial. Our duty is to construe the statute and not judicially alter it. Adams v. Atlantic County, supra.
The judgment of the Union County Court is affirmed.