**CITY OF EAST CHICAGO, INDIANA; East Chicago Park and Recreation Board, et al., Appellants (Defendants Below),**

v.

**Edward L.C. BROOMES, Edward Edwards, Katie Mason and Caesar Bonilla, et al., Appellees (Plaintiffs Below).**

No. 3–783A201.

Court of Appeals of Indiana, Third District.

Aug. 23, 1984.

Rehearing Denied Oct. 2, 1984.

Michael Connelly, Richard J. Lesniak, East Chicago, for appellants City of East Chicago; East Chicago Park and Recreation Bd.

Fred M. Cuppy, Gerald K. Hrebec, Kathryn D. Schmidt, David Cerven, Thomas, Burke, Dyerly & Cuppy, Merrillville, for appellants Charles Zordani, Solomon Seidel and Lawrence Bursten, individually and doing business as Metro Const. Co., a partnership.

Melvin Morris, David Stevens, East Chicago, for appellees.

HOFFMAN, Judge.

Defendants-appellants City of East Chicago, Indiana, and others (collectively referred to as the City) and Metro Construction Company (Metro) appeal from summary judgment granted in favor of plaintiffs-appellees Edward L.C. Broomes, Edward Edwards, Katie Mason, and Ceasar Bonilla (collectively referred to as taxpayers).

The basis of this appeal stems from the taxpayers' 1974 lawsuit to declare a construction contract between Metro and the City to be illegal and void. In *Broomes et al. v. City of East Chicago et al.,* (1976) 168 Ind.App. 348, 342 N.E.2d 893, this Court held Metro's contract bid "unsatisfactory" as a matter of law under IND. CODE § 5–16–1–2, and that the City erred in considering such bid. The cause was remanded for proceedings consistent with that ruling.

On remand, the trial court entered an order permanently enjoining Metro and the City from further performance on the contract. The cause was continued to determine whether Metro was entitled to recover on a *quantum meruit* theory for work previously completed, and to ascertain how much money, if any, would have to be returned by Metro to the City and its taxpayers. On July 7, 1982, partial summary judgment was entered in favor of the taxpayers. The court's order provides in relevant part:

"ORDERED that the oral Motion of defendants, CITY OF EAST CHICAGO and EAST CHICAGO PARK and RECREATION BOARD, to join in the plaintiffs' Motion for Partial Summary Judgment be and is denied, and it is further;

"ORDERED AND ADJUDGED that the plaintiffs' Motion for Partial Summary Judgment is granted in part and that judgment shall be and is hereby entered for plaintiff and against the defendants,

METRO CONSTRUCTION COMPANY, A Partnership, CHARLES ZORDANI, SOLOMON SEIDEL, and LAWRENCE BURSTEN, jointly and severally, in the sum of $692,411.28, with interest from March 1, 1976, which sum is the sum paid to METRO CONSTRUCTION COMPANY in excess of its labor and material costs and expenses, the said defendants, METRO CONSTRUCTION COMPANY, A Partnership, CHARLES ZORDANI, SOLOMON SEIDEL and LAWRENCE BURSTEN are ordered to return instanter to the defendant CITY OF EAST CHICAGO, and it is further;

"ORDERED that Plaintiff-Taxpayers and their attorneys, MELVIN MORRIS and DAVID STEVENS are entitled to judgment against the defendants in this cause, for damages, including costs and expenses and reasonable attorney fees which the Court hereby sets hearing and prove-up of said damages, costs, expenses and attorney fees for August 26, 1982, at 10:30 A.M."

On January 19, 1983, the court entered an order awarding the taxpayers' attorneys a total of $294,000 in fees.

■ Metro initially challenges the trial court's award of $692,411.28 under the June 7, 1982 partial summary judgment. Specifically, Metro asserts for the first time on appeal that a material issue of fact existed concerning the reasonable value of the materials and labor which it furnished to the City of East Chicago.

Indiana Rules of Procedure, Trial Rule 59(D)(2) requires that claimed errors "shall be stated in specific rather than general terms, and shall be accompanied by a statement of the facts and grounds upon which the errors are based." While this rule will not be grudgingly applied, it has long been held that errors not alleged in the motion to correct errors will not be considered on appeal. *Rogers v. Rogers,* (1982) Ind.App., 437 N.E.2d 92; *City of Evansville v. Miller,* (1980) Ind.App., 412 N.E.2d 281. The rationale underlying waiver of issues presented for the first time on appeal is perhaps best stated in the case of *Bennett*

*v. State,* (1973) 159 Ind.App. 59, at 62, 304 N.E.2d 827, at 829:

"While the motion to correct errors serves as the complaint on appeal, *its primary purpose is to afford the trial court the opportunity to rectify errors it has committed. Bud Gates, Inc. v. Jackson* (1970), 147 Ind.App. 123, 258 N.E.2d 691. Without being informed by a specific statement of the facts and grounds on which the claimed error is based, the trial judge cannot rectify his errors, if any. Were it otherwise, an appellant could propel himself into this or the Supreme Court by general statements of claimed errors, detailed at leisure after his motion to correct errors is overruled. Such a gigantic bootstrap by the appellant is precisely what the rules of appellate procedure are designed to avoid." (Emphasis added.)

Nowhere in its motion to correct errors or statement of facts in support of that motion did Metro even attempt to forward this issue. Metro's complete failure to apprise the trial court of this alleged error precludes appellate review of that issue.

■ Metro next contends that the trial court ignored a material issue of fact regarding its good faith in rendering services to the City. In *Broomes et al. v. City of East Chicago et al., supra,* this Court held that the parties' underlying contract was not entered into in conformance with statutory requirements. On remand, the trial court declared this agreement to be null and void, and continued the cause for determination of Metro's *quantum meruit* claim.

Indiana courts have held that where benefits inure to a governmental unit under the color of what appears to be a contract, the contractor is entitled to the reasonable value of labor and materials in the absence of any fraud. *Lake Co. Comm'rs et al. v. Dedelow et al.,* (1974) 159 Ind.App. 563, 308 N.E.2d 420. No recovery may be had for profits or overhead attributable to the work provided under such contracts. *Dedelow, supra.* Metro's argument fails to take even cursory notice of the trial court's

judgment. The record indicates that prior to finding the contract void, the City advanced Metro a total of $1,549,593. Metro's expenses for material and labor only amounted to $857,181.72 at the time the contract was declared void. In ordering Metro to remit only the difference between the premium paid and the value of the service and materials used, the trial court necessarily found that Metro had not fraudulently performed or induced the contract. Regardless of whether Metro proceeded with good faith, it is only entitled to the reasonable value of labor and material provided. The trial court's judgment reflects such by allowing Metro to keep prepaid funds commensurate with its expenses. The trial court committed no error in ordering all monies paid in excess of these expenses remitted to the City.

■ Next, the City and Metro jointly attack the trial court's award of $294,000 in fees to the taxpayers' attorneys. Appellants initially challenge the legality and propriety of assessing attorney fees under the fact situation presented in this cause.

The general rule in Indiana is that each party to a lawsuit is obligated to pay his own attorney fees in the absence of a statute or stipulation specifically authorizing the allowance. *Umbreit v. Chester B. Stem, Inc.*, (1978) 176 Ind.App. 53, 373 N.E.2d 1116; *St. Joseph's College et al. v. Morrison, Inc.*, (1973) 158 Ind.App. 272, 302 N.E.2d 865. However, through the exercise of equitable powers, Indiana courts have carved out the following three exceptions to the general rule:

1) The "obdurate behaviour" situation. Here the courts use their equitable powers to impose costs on defendants who behaved in bad faith. *See, Cox v. Ubik*, (1981) Ind.App., 424 N.E.2d 127.

2) The "common fund" situation. Here the courts use their equitable powers to insure that the beneficiaries of litigation are the ones who share the expense. This is a defensive use of the equitable power of the courts to prevent the unjust enrichment of "free riders". *See, City of Ham-*

*mond v. Darlington et al.*, (1959) 241 Ind. 536, 162 N.E.2d 619.

3) The "private attorney general" situation. Here the courts use their power offensively when necessary and appropriate to insure the effectuation of a strong Congressional policy.

■ The trial court awarded attorney fees under the common fund theory of recovery, as evidenced by the following findings:

"1. That this litigation has been pending since 1974.

2. That plaintiffs and their attorneys by successfully bringing this action contributed to preserving the integrity of the prescribed bidding system for Public Works Projects and plaintiffs' attorneys should be awarded a fair and adequate fee.

3. That plaintiffs' attorneys have defended and preserved taxpayers funds in the sum of $3,159,576.00 held in trust by the City of East Chicago for the renovation of public parks from unlawful dissipation by the defendants and the claims of defendant-Metro and it's [sic] Partners.

4. That plaintiffs have created a fund by obtaining a Judgment against the defendant-Metro and it's [sic] Partners in the sum of $692,411.28."

These findings, which are amply supported by the record, entitle the taxpayers' attorneys to recover reasonable fees under the common fund theory established by the Supreme Court of Indiana in the case of *City of Hammond v. Darlington et al.*, (1959) 241 Ind. 536, 162 N.E.2d 619. In *Darlington*, the Supreme Court held that where representatives of a class perform services from which all other taxpayers receive a benefit, either through the preservation or recovery of tax dollars, the beneficiaries may be required to equally bear the cost of reasonable attorney fees.

In the case at bar, representative taxpayers have worked for almost ten years to vindicate the rights of all taxpayers living

in East Chicago. In doing so, funds of over three million dollars were preserved, which would otherwise have been expended on an illegal contract. Furthermore, the judgment entered against Metro represents a recovery of funds in favor of the City. This judgment, totaling $692,411.28, created a common fund, from which attorney fees could be paid. It is in exactly this situation that the common fund theory of recovery permits a trial judge to award reasonable attorney fees.

■ Finally, the City maintains that the trial court's award of $294,000 in attorney fees is both contrary to the evidence and clearly excessive. The court's findings indicate that the award is based on the following criteria:

"5. That the attorneys for plaintiffs are skilled, experienced, and competent counsel who have spent collectively in excess of 2,000 hours representing plaintiffs in this cause.

6. That based on the unrebutted evidence presented and this Court's many years of experience with fees charged by Lake County attorneys, this Court finds a reasonable average hourly rate for attorneys over the period of 1974 to 1983 to be $70.00 per hour.

7. That the lodestar for the attorney fees herein is, utilizing a multiplier of from 1.3 to 3.5 the reasonable hourly rate computation of $70.00 per hour for 2,000 hours, to which there shall be an augmentation in consideration of the following: (1) the complexity of the litigation, (2) the difficulty of unearthing the facts, (3) the contingent nature of the success of the matter, (4) the skill and experience of all counsel involved, (5) the benefit to the citizens of East Chicago and the public, (6) the hours involved, and (7) the fact that the attorneys have waited since 1974 for any fees, the Court finds under the law and facts herein that a multiplier of 2.1 should be applied for determining the reason-

able attorney fees. The court finds that reasonable fees are $294,-000.00, the sum of One Hundred Eighty Thousand ($180,000.00) Dollars is fair and equitable compensation for plaintiffs' counsel, MELVIN MORRIS, and that the sum of One Hundred Fourteen Thousand ($114,000.00) Dollars is fair, just and equitable compensation for plaintiffs' counsel, DAVID S. STEVENS. That plaintiffs have advanced or incurred reasonable and necessary expenses and costs in the sum of Three Thousand Five Hundred Forty-Five ($3,545.00) Dollars for which they should be reimbursed."

The record indicates that these findings were reached following an evidentiary hearing held over a period of three days, in which testimony was produced requiring over 300 pages to transcribe.

The reasonableness of attorney fees rests within the sound discretion of the trial court, and will be reversed on appeal only when an abuse of that discretion is demonstrated. *Peoples State Bank v. Thompson*, (1984) Ind.App., 462 N.E.2d 1068; *U.S. Aircraft Financing, Inc. v. Jankovich*, (1980) Ind.App., 407 N.E.2d 287; *Streets v. MGIC Mort. Corp. et al.*, (1978) 177 Ind.App. 184, 378 N.E.2d 915. In exercising that discretion, the trial court should consider certain objective standards regarding what constitutes *reasonable* attorney fees. Such factors may include time, labor, skill required to perform the service, difficulty of issues, the fee customarily charged in the locality for similar services, the amount of money involved, and those factors set forth in the Code of Professional Responsibility, D.R. 2–106(B). *Peoples State Bank, supra.*

In the case at bar, the trial court employed the lodestar multiplier factor, which was based upon the objective factors discussed above. Without expressly approving the lodestar formula, it nevertheless appears that the trial court considered the requisite factors in determining attorney fees. There was no abuse of discretion.

The judgment of the trial court is in all respects affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.