Bryant DOWNING, Randall Applegate
and David Kittle, Appellants
(Plaintiffs Below),

v.

The CITY OF COLUMBUS, Indiana
Appellee (Defendant Below).

No. 07A01–8607–CV–17.

Court of Appeals of Indiana,
First District.

March 31, 1987.

Rehearing Denied May 21, 1987.

John C. Ruckelshaus, John F. Kautzman,
Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, for appellants.

Peter Campbell King, Karon E. Perkins,
Columbus, for appellee.

ROBERTSON, Judge.

The plaintiff-appellants Bryant Downing,
Randall Applegate and David Kittle appeal
from the trial court's granting of summary
judgment in favor of the defendant-appellee City of Columbus, Indiana.

We reverse and remand in part and affirm in part.

The factual basis of this appeal is that
the three appellants are employed as police
officers by the City of Columbus. They
are also members of the Indiana National
Guard. The City of Columbus promulgated a personnel policy which stated that
employees on military leave would receive
their regular pay less pay received from

the military. Upon completion of the required two-week annual military training by the appellants, the City of Columbus issued them paychecks which had an amount equal to their military pay deducted therefrom. The appellants filed suit to recover the difference in pay, with this appeal resulting.

The issues argued on appeal are stated as:

1. Whether the trial court erred and acted contrary to law in its interpretation and construction of Indiana Code 10-2-4-3 in concluding that policemen who serve the Indiana National Guard are not penalized by a municipal employer's failure to pay them regular wages while serving their state and country.

2. Whether the trial court erred and acted contrary to law in ruling that public employee payment of National Guard and Reserve personnel is a matter of substantive local self-government to be exclusively determined by the local municipality.

3. Whether the trial court erred and acted contrary to law in ruling that the actions of the City of Columbus, Indiana were valid and protected by the statutory immunity of the Indiana Tort Claims Act.

4. Whether the trial court erred and acted contrary to law in ruling that the Plaintiffs were not entitled to attorney fees under the "private attorney general" and/or "common fund" exceptions to the American Rule when Plaintiffs' lawsuit effectuates a strong national policy and benefits hundreds of other people similarly situated.

The statute from the Indiana Military Code (I.C. 10-2-1-1 *et seq.*) involved in the first issue, IND.CODE 10-2-4-3, reads:

Person entitled to leave of absence from civilian duties.—Vacations.—All officers and employees of the state and of any county, township, municipality or school corporations thereof, who are members of the Indiana national guard or of reserve components or the retired personnel of the naval, air or ground forces, *shall be entitled to leave of absence from their respective duties, in addi-*

*tion to regular vacation period, without loss of time or pay* for such time as the members of the national guard are in the military service on training duties of the state of Indiana under the order of the governor as commander in chief, or as members of any reserve component under the order of the component authority thereof, for periods of not to exceed fifteen (15) days in any one calendar year. [Acts 1953, ch. 187, § 403; 1955, ch. 75, § 9]. (emphasis added).

We are of the opinion that the trial court did not correctly interpret I.C. 10-2-4-3 for the reason that the statute plainly states that employees of any municipality shall be entitled to a leave of absence without loss of pay. When a statute contains clear and unambiguous language, the only rule of construction necessary is that words and phrases shall be taken in their plain or ordinary and usual sense. *Daughtery v. State* (1984), Ind.App., 466 N.E.2d 46.

As the appellants point out, two different paths are taken by statutes relating to military pay:

While some statutes expressly provide that employees be compensated only to the extent that their civilian pay exceeds their military pay, courts have held that statutes which require that employees be granted leaves of absence "without loss of pay" require the employer to provide the full amount of the employee's civilian compensation. 8 A.L.R. 4th 704, at 707.

An example of a statute which reflects the City's position and adopted by the trial court is 20 Del. C. § 181(c) (since amended) which reads in pertinent part:

Any employee of this State while on state duty on account of an emergency as listed in § 171 of this title shall be paid for each day of such state duty an amount equal to his regular pay for such day's employment as an employee of this State less any pay and allowances provided for under subsection (a) of this section.

Other states have statutes similar to I.C. 10-2-4-3 which provide for employees of the state and, in many instances, other governmental entities, to be paid both civil-

ian and military pay while on active military duty pursuant to orders issued by the appropriate military authority. It is common in these statutes to place a time limit of from fifteen to thirty days a year during which pay from both sources can be collected. As will be seen in subsequent discussion, the weight of authority favors the appellants.

The New Jersey statute, R.S. 38:23–1, N.J.S.A., comparable to I.C. 10–2–4–3, also employs the term "without loss of pay or time". In applying that statute it was held that a park employee was entitled to both his civilian and military pay while engaged in field training. *Parks v. Union County Park Com.* (1950) 7 N.J.Super. 5, 71 A.2d 651. Additionally, the comparable Oklahoma statute, 44 O.S. 1973 Supp. § 209, which specifies "with full pay", requires the payment of both civilian and military pay. *Reed v. Tulsa* (1977 Okla.) 569 P.2d 451.

The Iowa statute dealing with the same subject matter is I.C.A. § 29A.28. In determining under that statute that officers and employees of the state are entitled to up to thirty days leave of absence "without loss" of pay, the Iowa Attorney General has determined that qualified National Guardsmen are entitled to usual civilian pay during annual training, Op. Iowa Atty. Gen., Aug. 22, 1956, and that the deduction of military pay from regular salary is not authorized, Op. Iowa Atty. Gen., June 8, 1956. Moreover, this statute is to be liberally construed. *Gibbons v. Sioux City* (1951), 242 Iowa 160, 45 N.W.2d 842.

A Minnesota statute, M.S.A. § 192.26, is also very similar to I.C. 10–2–4–3 in that it provides for up to fifteen days of military service "without loss of pay". In *Byrne v. Independent School Dist. No. 237* (1975), 305 Minn. 49, 232 N.W.2d 432, the firing of a tenured school teacher because of his absence to attend Command and General Staff College was construed by the school board as a breach of contract. In reversing the school board, the Minnesota Supreme Court said:

The sole issue presented on appeal is one of statutory construction. Underlying statutes preserving employment rights for citizens who serve the military is the basic principle that a person who serves in the armed forces should not be penalized for that service in civilian life. *Tilton v. Missouri Pacific R. Co.*, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964); *Morgan v. Gulf M. & O.R. Co.*, 405 F.2d 415 (8 Cir.1969). These provisions are liberally construed so as to effectively implement their basic purposes, and are available to all who perform military service, whether that service is voluntary or involuntary. *Rudisill v. Chesapeake & O. Ry. Co.*, 167 F.2d 175 (4 Cir.1948); *Boston & Maine R.R. v. Hayes*, 160 F.2d 325 (1 Cir.1947). (Footnote omitted). 232 N.W.2d at 434.

The court also held that the teacher was eligible for fifteen days of civilian pay as well as his military pay. Moreover, the Minnesota Attorney General has issued an opinion which states that National Guardsmen and Reservists are entitled to full military pay for the period on duty not to exceed fifteen days as well as his pay from the public agency by which they are employed. Op.Minn.Atty.Gen., 310h–1(a) May 23, 1961.

In *Colo. Springs Teachers Ass'n. v. School Dist.* (1980), Colo.App., 622 P.2d 602, in dealing with § 28–3–601 C.R.S., a "without loss of pay" statute very similar to I.C. 10–2–4–3, it was held that the civilian pay of teachers could be a matter about which the teachers were free to bargain with the school district insofar as the deduction of military pay is concerned. Such a ruling is based upon the assumption that the teachers were entitled to both civilian and military pay.

Although the record before us is without facts regarding legislative intent, the trial court gratuitously found that the intent of I.C. 10–2–4–3 was to not cause a loss of pay while on military training; however, it was not intended to give a bonus.[1] A bet-

---

1. The trial court probably meant windfall or a word of similar import. The word "bonus" when used in the context of military pay and allowances means any compensation or bounty

ter reasoned approach was taken in *Byrne, supra:*

> Our interpretation of these statutory provisions is supported by all indications of legislative intent. Minn.St. 190.03 provides that the intent of the Military Code (Chapters 190 through 193) is to conform to Federal law relating to the same subjects. Federal law provides reemployment rights in employees of the Federal government and private employers who leave for periods of active or inactive training. Such leaves are not limited to periods of war or national emergency. 50 U.S.C.A.App., § 459(g)(4). Furthermore, it is the express sense of Congress that these same rights be extended to state and municipal employees. 50 U.S.C.A. App., § 459(b)(C).
>
> We believe that our legislature has, with these statutes, provided public employees in Minnesota with comparable military rights. 232 N.W.2d at 435.

■ In sum, we hold that I.C. 10–2–4–3 means what it says. The specified officers and employees of Indiana governmental units are entitled to civilian and military pay for up to fifteen days a year when on training duties pursuant to proper orders issued by the appropriate military authority. Not only is such a holding supported by the weight of authority, it also furthers state and federal policy encouraging participation in military duty.

Under appellant's second issue, it is argued that the trial court erred in determining that the public employee payment of National Guard and Reserve Personnel is a matter of substantive local self-government ("home rule") to be determined by a local municipality. We agree.

The Ordinance of Congress creating the Northwest Territorial Government, passed on July 13, 1787, provided for a territorial militia. In a similar manner, Article XII of both the 1816 and 1851 Indiana State Constitutions provides for a state militia. There is a significant historical basis in the constitutional requirement that a state militia exist and that it is an area of interest within which the state is required to act.

■ The measure to be used in this issue, the extent of allowable home rule, is stated in *City of Indianapolis v. Clint's Wrecker* (1982), Ind.App., 440 N.E.2d 737.

An impermissible conflict with state law will be found if the Ordinance seeks to prohibit that which a statute expressly permits. If the state has not chosen to occupy an area to the exclusion of municipal regulation, the City may impose additional, reasonable regulations, and may supplement burdens imposed by non-penal state law, provided the additional burdens are logically consistent with the statutory purpose. *Board of Public Safety v. State ex rel. Benkovich,* (1979) Ind.App., 388 N.E.2d 582.

We are of the opinion that the matter of military pay for National Guardsmen as contemplated by I.C. 10–2–4–3 is a matter reserved to the State and that the interpretation urged by the City attempts to prohibit that which the state statute expressly directs. Furthermore, we deem the following from *Reed, supra,* equally appropriate:

> Clearly, the State, under the provisions of Article 5, Section 40, of the State's Constitution, has the power to provide for and maintain a state militia. Under these powers, the State has the right to encourage citizens to participate in the National Guard. In enacting 44 O.S.1973 Supp. § 209, the State exercised that right, and encouraged state and municipal employees to participate in the militia, by making such participation financially advantageous. Clearly, more than municipal interests are involved in the establishment of a state militia, and the state statutes would control over municipal provisions. Likewise, the maintenance of a strong national defense involves more than purely local or municipal interest. With the enactment of [the full pay statute] the State encouraged participation in the national defense system. The interest served by both the National Guard and the U.S. Military Reserve components is clearly of more importance than local or municipal interests, thus the municipal personnel rules are superseded by state statutes dealing with the National Guard and other Military Reserve components and we so hold. (Footnote omitted). 569 P.2d at 454.

■ Further, we are of the opinion that the trial court committed error in relying upon the City's argument that they are not liable for the pay difference because I.C. 34–4–16.5–3(7) states that a governmental entity is not liable if a loss results from the

provided by law which is to induce participation in military service or to compensate for any loss

suffered thereby. 22 A.L.R.2d 1134, 1136.

adoption and enforcement of or failure to adopt or enforce a law, rule, or regulation. Reliance upon that section of the Indiana Tort Claims Act is totally misplaced for the most basic reason that the statute applies exclusively to actions in tort. I.C. 34-4-16.5-1. The appellants' cause of action is based upon their contract of employment and is completely devoid of any allegation of tortious conduct by the City. As a matter of fact, the trial court expressly exonerates the City from conduct generally regarded as tortious in that the trial court's conclusion of law twelve states that there was no demonstration of bad faith or vexatious or oppressive conduct on the part of the City.

We conclude by holding that the trial court did not err in not awarding attorney's fees.

■ In Indiana, as in the federal court system, the prevailing litigant is not entitled to collect a reasonable attorney's fee from the loser, absent a statutory or contractual provision to the contrary. *Trotcky v. VanSickle* (1949), 227 Ind. 441, 85 N.E.2d 638. However, there are certain uses of the trial court's equitable powers which have been recognized as exceptions to this rule. *See, St. Joseph's College v. Morrison, Inc.* (1973), 158 Ind.App. 272, 302 N.E.2d 865, *trans. denied,* and its progeny. While the "obdurate behavior" and "common fund" exceptions continue to be viable in Indiana, the "private attorney general" exception identified in these cases has existed only in dicta. The Indiana Supreme Court has not acknowledged or applied this approach. Neither have we discovered any decision in which a prevailing party has been permitted to recover under the exception. Moreover, as we indicated in 1978, the United States Supreme Court has strongly reaffirmed the American rule, holding that in the absence of statutory authorization by Congress, prevailing litigants in *federal* actions cannot recover attorney's fees based upon the "private attorney general approach." *See, Umbreit v. Stem* (1978), 176 Ind.App. 53, 373 N.E.2d 1116, 1119 and *Alyeska Pipeline Service Co. v. Wilderness Society* (1973), 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141. In *Alyeska Pipeline,* the Supreme Court explicitly stated that it believed the federal decisions in *LaRaza Unida v. Volpe* (N.D. Cal.1972), 57 F.R.D. 94, affirmed 488 F.2d 559, and *Sims v. Amos* (M.D.Ala.1972), 340 F.Supp. 691, summarily affirmed 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215, cited as authority for the private attorney general exception in *St. Joseph's College v. Morrison, supra,* to have been erroneously decided.

*LaRaza Unida* and *Sims* were class actions, in which the plaintiffs sought injunctive or declaratory relief to preserve basic civil liberties or to effectuate public interest legislation. The private attorney general concept espoused in *LaRaza Unida,* 57 F.R.D. 94, and *Sims v. Amos,* 340 F.Supp. 691, briefly stated, is that "whenever there is nothing in a statutory scheme which might preclude it, a 'private attorney general' should be awarded attorney's fees when he has effectuated a strong Congressional policy which has benefited a large class of people and where further, the necessity and financial burden of private enforcement are such as to make the award essential." *LaRaza Unida,* 57 F.R.D. at 98. We see nothing in the record which would indicate that such an approach would apply in this case.

■ It is in a similar manner that we find that the common fund theory of awarding attorney's fees not applicable to this case. In discussing the common fund theory in *City of East Chicago v. Broomes* (1984), Ind.App., 468 N.E.2d 231, it was held that:

> where representatives of a class perform services from which all other taxpayers receive a benefit, either through the preservation or recovery of tax dollars, the beneficiaries may be required to equally bear the cost of reasonable attorney fees. 468 N.E.2d at 234.

The record does not show facts which would warrant the award of attorney's fees under the foregoing from *City of Chicago, supra.*

The cause is reversed and remanded with instructions to grant summary judgment for the appellants, except for the awarding of attorney's fees.

## OPINION ON PETITION FOR REHEARING

The City raises two points in its petition for rehearing which we shall address.

The first is that the statement of facts omits the facts that Downing, Applegate, and Kittle knew of the pay policy prior to going on annual training and that during their annual training they were not available for service to the City of Columbus. The reason for not including these facts in our opinion is that they are not germane.

A reading of the judgment indicates that the trial court did not rely upon them. Additionally, we are of the opinion that neither fact has any bearing upon IND. CODE 10–2–4–3.

The other contention is our failure to mention the case of *Northern Ohio Patrolmen's Ben. Assn. v. City of Parma* (1980), 61 Ohio St.2d 375, 402 N.E.2d 519. That case construed a pay provision similar to the City's in a manner favorable to the City. It is contrary to the weight of authority. Neither do we believe it appropriate authority for the City's home rule argument for the reason that Ohio's home rule provisions, according to the facts in *Benevolent*, are different in substance from those of Indiana and, as a result, of little value in this appeal.

The opinion herein is in all things affirmed and the petition for rehearing is denied.

RATLIFF, C.J., and SHIELDS, P.J., concur.