[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 399.]

THE STATE EX REL. FRATERNAL ORDER OF POLICE, OHIO LABOR COUNCIL, INC. ET AL. *v.* CITY OF SIDNEY.

[Cite as *State ex rel. Fraternal Order of Police, Ohio Labor Council, Inc. v. Sidney*, 2001-Ohio-79.]

*Mandamus sought to compel city of Sidney to comply with R.C. 5923.05 by paying relator his regular pay as a police lieutenant in addition to his military pay while performing military service without being required to schedule vacation leave during those absences—Cause dismissed, when.*

(No. 00-1899—Submitted March 27, 2001—Decided May 16, 2001.)

IN MANDAMUS.

_____

*Per Curiam.*

{¶ 1} Relator John Frilling is a permanent public employee as defined in R.C. 5903.01(A) who is employed as a police lieutenant by respondent, the city of Sidney, Ohio, a chartered municipality. Frilling is a member of relator Fraternal Order of Police, Ohio Labor Council, Inc. ("FOP"), which is the exclusive representative of employees in the classifications of Communications Technicians, Patrol Officers, Sergeants, and Lieutenants for the Sidney Police Department. Frilling has also been a member of the United States Air Force Reserve and the Ohio Air National Guard.

{¶ 2} Between December 23, 1996 and December 13, 1999, Sidney Ordinance No. 131.18 provided:

"MILITARY LEAVE.

"Any employee who is a member of the National Guard or militia or of the military or naval forces of the United States, and is required to undergo field training therein or is called for active duty, shall be granted a leave of absence with

pay for the period. Vacation and sick leave shall only be accrued at the employee's regular rate during this paid leave. This paid leave of absence shall be in addition to his vacation leave, but shall not exceed fifteen days in any fiscal year. *In the case of military leave, paid leave shall mean the difference between the employee's regular salary and all government money received for such military leave, excluding any transportation reimbursement received*." (Emphasis added.)

{¶ 3} In December 1999, this ordinance was amended to provide for twenty-two days military leave in any calendar year.

{¶ 4} In addition, the collective bargaining agreement between the FOP and Sidney contained a comparable military leave provision that provided that this leave shall not exceed fifteen days in any fiscal year and that paid military leave is "the difference between the employee's regular salary and all governmental money received for such military leave, excluding any transportation reimbursement received."

{¶ 5} These provisions confer lesser benefits than R.C. 5923.05, which provides for military leave "without loss of pay" for permanent public employees. R.C. 5923.05(A). Effective September 18, 1997, R.C. 5923.05(F) was amended to provide that "[a]ny permanent public employee of a political subdivision whose employment is governed by a collective bargaining agreement with provision for the performance of service in the uniformed services shall abide by the terms of that collective bargaining agreement with respect to the performance of such service, *except that no collective bargaining agreement may afford fewer rights and benefits than are conferred under this section*." (Emphasis added.) 147 Ohio Laws, Part IV, 7806, 7875.

{¶ 6} Since September 18, 1997, Frilling has been on requested leaves of absence from his job with Sidney while serving in the United States Air Force Reserve and the Ohio Air National Guard. According to Frilling, during these absences, Sidney did not grant him a leave of absence without loss of pay, and the

city required him either to use his days off or use his accrued vacation or personal leave to cover his military absences. Frilling never provided evidence to the city that he had been called to military duty when he requested and received military leave.

{¶ 7} In January 2000, Frilling attempted to schedule two days of military leave in addition to his eight unpaid, authorized days off. Sidney treated Frilling's military leave as paid personal days off, and Frilling filed a grievance under the grievance and arbitration procedure of the collective bargaining agreement. Neither the FOP nor Frilling pursued the grievance through the final step in the agreement, *i.e.*, arbitration.

{¶ 8} In October 2000, the FOP and Frilling filed this action for a writ of mandamus to compel the city of Sidney to comply with R.C. 5923.05 by paying Frilling "his regular pay plus interest, irrespective of any pay he receives from the military, during his leaves of absence since September 18, 1997 while performing services in the uniformed services without requiring him to schedule his off days or benefit leave during these absences." After Sidney filed an answer in December 2000, the case was referred to mediation. In February 2001, the cause was returned to the regular docket.

{¶ 9} This cause is now before the court for its S.Ct.Prac.R. X(5) determination.

{¶ 10} We must now determine whether dismissal, an alternative writ, or a peremptory writ is appropriate. S.Ct.Prac.R. X(5); *State ex rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas* (2000), 88 Ohio St.3d 447, 449, 727 N.E.2d 900, 902. Dismissal is appropriate if it appears beyond doubt, after presuming the truth of all material factual allegations and making all reasonable inferences in favor of relators, that they are not entitled to the requested extraordinary relief. *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 632, 716 N.E.2d 704, 708.

**{¶ 11}** Relying solely upon R.C. 5923.05, relators claim that Frilling must be paid his regular salary from Sidney in addition to his military pay while performing military service without being required to schedule vacation leave during these absences. For the following reasons, relators' claim is meritless.

**{¶ 12}** First, R.C. 5923.05 is inapplicable to Frilling's military leave because of the plain language of R.C. 4117.10. R.C. 4117.10(A) expressly states that absent an election by the city to provide the military leave specified in R.C. 5923.05, the provisions of the collective bargaining agreement prevail:

"*The law pertaining to the leave of absence and compensation provided under section 5923.05 of the Revised Code prevails over any conflicting provisions of [collective bargaining] agreements if the terms of the agreement contain benefits which are less than those contained in that section or the agreement contains no such terms and * * * the public authority* is another entity listed in division (B) of section 4117.01 of the Revised Code that *elects to provide leave of absence and compensation as provided in section 5923.05 of the Revised Code*." (Emphasis added.)

**{¶ 13}** Here, R.C. 5923.05 does not prevail over either the collective bargaining agreement or the Sidney ordinance. The city has *not elected* to provide the military leave and compensation specified in R.C. 5923.05. In fact, through its collective bargaining agreement and ordinance, Sidney has elected otherwise.

**{¶ 14}** Second, R.C. 5923.05 is inapplicable because it conflicts with Sidney Ordinance No. 131.18. An ordinance adopted by a municipality pursuant to its constitutional home-rule authority regarding military leave of its employees prevails over conflicting state law. See *N. Ohio Patrolmen's Benevolent Assn. v. Parma* (1980), 61 Ohio St.2d 375, 378, 15 O.O.3d 450, 452, 402 N.E.2d 519, 521-522 ("It is axiomatic that an ordinance, similar to the one at bar [regarding military pay], if enacted by a chartered municipality, would prevail over the state law [R.C. 5923.05] irrespective of any conflict"); *Mullen v. Akron* (1962), 116 Ohio App.

417, 22 O.O.2d 251, 188 N.E.2d 607; see, also, 2000 Ohio Atty.Gen.Ops. No. 2000-007, fn. 4.

{¶ 15} Third, even assuming that R.C. 5923.05 conferred a legal right on Frilling to the requested military leave and compensation, relators failed to specifically allege that Frilling satisfied the statutory prerequisite for these benefits. R.C. 5923.05(E) mandates that each permanent employee entitled to this leave "*shall submit* to the permanent public employee's appointing authority *the published order authorizing the call or order to the uniformed services or a written statement from the appropriate military commander authorizing that service, prior to being credited with such leave.*" (Emphasis added.) S.Ct.Prac.R. X(4)(B) requires the pleading of specific facts in mandamus actions in this court rather than unsupported conclusions. *State ex rel. Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 390, 715 N.E.2d 179, 184. Relators' complaint does not contain even conclusory allegations regarding compliance with the R.C. 5923.05(E) statutory requirement.

{¶ 16} Finally, to the extent that relators might claim that they are entitled to relief under the parties' collective bargaining agreement, they have or had an adequate legal remedy through the agreement's grievance and arbitration procedure. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 449, 663 N.E.2d 639, 641.

{¶ 17} Based on the foregoing, it appears beyond doubt that relators' action lacks merit and is dismissed.

*Cause dismissed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

PFEIFER, J., dissents and would grant an alternative writ.

————————————

*Paul L. Cox* and *Kay E. Cremeans*, for relators.

*Denlinger, Rosenthal & Greenberg Co., L.P.A., Robert M. Lamb* and *Daniel G. Rosenthal*, for respondent.

_____