[Cite as *Lam v. Cleveland*, 2021-Ohio-205.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DAVID H. LAM,                                    :

    Plaintiff-Appellant,          :

                                No. 109233

    v.                                        :

CITY OF CLEVELAND,                           :

    Defendant-Appellee.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 28, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-902688

---

### *Appearances:*

The Law Offices of D.G. Morris, L.L.C., and Daniel G. Morris, *for appellant.*

Zashin & Rich Co., L.P.A., Jon M. Dileno, and Ami J. Patel, *for appellee.*

LARRY A. JONES, SR., J.:

{¶ 1} Plaintiff-appellant David Lam ("Lam") appeals from the trial court's October 2019 decision in which it denied his motion for summary judgment and granted the motion for summary judgment of defendant-appellee, the city of Cleveland. For the reasons that follow, we affirm.

**Procedural and Factual History**

{¶ 2} At all relevant times, Lam was a police officer for the city of Cleveland and a drilling reservist with the Ohio Army National Guard. Lam began his employment with the city in 2008. From the start of Lam's employment with the city until April 17, 2019, Cleveland Codified Ordinances 171.57 governed his pay while he was on military leave. The ordinance provided in relevant part as follows:

> All officers and employees of the City who are regular active-duty members of any component of the Armed Forces of the United States, or reservists who are called to active duty to serve in the Ohio National Guard, * * * are entitled to a leave of absence from their respective duties for such time as they are in the military service or field training or active duty. If a City employee's military pay or compensation during such period of leave of absence is less than his or her City pay would have been for such period, he or she shall be paid, by the City, the difference in money between the City pay and his or her military pay for such period.

Former Cleveland Codified Ordinances 171.57(A).[1]

{¶ 3} Further, the terms and conditions of Lam's employment as a Cleveland police officer were set forth in the city's collective bargaining agreement ("CBA") with his former union, the Cleveland Police Patrolmen's Association ("CPPA").[2] Article 13 of the CPPA's CBA stated the following, in pertinent part, with respect to military leave:

> An employee who is temporarily called to active duty (e.g. summer training) shall be granted a leave for the duration of such active

---

[1]The ordinance was amended in April 2019; the ordinance, as amended, is not relevant to this appeal.

[2]Lam was later promoted within the ranks of the police department and under his new position he was governed by the CBA of the Fraternal Order of Police Lodge No. 8.

duty and shall be paid the difference between his [or her] regular pay and his [or her] total military pay (upon receipt of a service pay voucher) for a period not to exceed thirty-one (31) days in any calendar year, and further, shall accumulate vacation and sick leave with pay credit during the period of such leave. Employees on military leave who thereafter return to employment with the City shall receive retirement credit for all time spent in active military service.[3]

{¶ 4} Thus, under the governing CBA and Cleveland Codified Ordinances 171.57, Lam was entitled to differential pay while on military leave. That is, he was entitled to the difference between his city earnings and his military pay for the entire time that he was on military leave of absence from his city job.

{¶ 5} Ohio law provides a different calculation for pay under military leave, however. Specifically, R.C. 5923.05 provides in relevant part as follows:

(A)(1) Permanent public employees who are members of the Ohio organized militia or members of other reserve components of the armed forces of the United States, including the Ohio national guard, are entitled to a leave of absence from their respective positions without loss of pay for the time they are performing service in the uniformed services, for periods of up to one month, for each federal fiscal year in which they are performing service in the uniformed services.

* * *

(B) Except as otherwise provided in division (D) of this section, any permanent public employee who is employed by a political subdivision, who is entitled to the leave provided under division (A) of this section, and who is called or ordered to the uniformed services for longer than a month, for each federal fiscal year in which the employee performed service in the uniformed services, because of an executive order issued by the president of the United States, because of an act of congress, or because of an order to

---

[3]The CBA from the Fraternal Order of Police Lodge No. 8 did not contain any provision relative to military leave. During the time it governed Lam's employment relationship with the city, the city paid him pursuant to Cleveland Codified Ordinances 171.57.

perform duty issued by the governor pursuant to section 5919.29 of the Revised Code is entitled, during the period designated in the order or act, to a leave of absence and to be paid, during each monthly pay period of that leave of absence, the lesser of the following:

(1) The difference between the permanent public employee's gross monthly wage or salary as a permanent public employee and the sum of the permanent public employee's gross uniformed pay and allowances received that month;

(2) Five hundred dollars.

* * *

(D) No permanent public employee shall receive payments under division (B) or (C) of this section if the sum of the permanent public employee's gross uniformed pay and allowances received in a pay period exceeds the employee's gross wage or salary as a permanent public employee for that period or if the permanent public employee is receiving pay under division (A) of this section.

{¶ 6} Under federal law, the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA" or "the Act") provides that employers may not discriminate against or deny any employment benefit to uniformed service members. *See* 38 U.S.C. 4311(a). USERRA provides that those on military leave are

> entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. 4316(b)(1)(B).

{¶ 7} With the USERRA, Congress sought to "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to

civilian careers and employment" from military service and to "minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities," and to "prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. 4301(a).

{¶ 8} It is Lam's contention that the city was required under Ohio and federal law to provide him pay while on military leave in accordance with R.C. 5923.05, rather than in accordance with Cleveland Codified Ordinances 171.57 and the CBA. Thus, under Lam's calculation, he should be entitled to both his full pay from the military and full pay from the city of Cleveland for one month in each calendar year during which he is on military leave from his city job. Then, after a full month of pay from both the military and city, Lam contends he would be entitled to the lesser of the difference between his city pay and his military pay and allowances, or $500.

{¶ 9} In June 2016, Lam and another Cleveland police officer, Leonard Graf ("Graf"), filed a lawsuit in the U.S. District Court for the Northern District of Ohio. *See Lam v. Cleveland*, N.D.Ohio No. 1:16CV-01563 ("*Lam I*"). The city filed a Civ.R. 12(C) motion to dismiss. The district court granted the motion in part and denied it in part. Specifically, the court granted the city's motion as it pertained to Count 2 of Graf and Lam's complaint, which alleged that the plaintiffs were denied a benefit under USERRA because the city of Cleveland did not pay them military

pay under R.C. 5923.05. The court denied the city's motion as it related to the plaintiffs' other claims.

{¶ 10} Subsequently, Lam was deployed overseas and voluntarily dismissed his remaining claims. Graf continued litigating the case, proceeding to discovery and he and the city filing motions for summary judgment. In September 2018, the district court granted judgment in favor of the city of Cleveland on all of Graf's remaining claims. The court found that the city's ordinance was neither unlawful, nor in violation of the federal or state constitutions.

{¶ 11} Meanwhile, in August 2018, Lam filed the within action in the common pleas court. In his second amended complaint, Lam sought relief under three counts: (1) in Count 1, he sought a declaratory judgment; (2) in Count 2, he alleged a violation of R.C. 5923.05, "denying reservists a benefit of an employment and reemployment right accrued during the performance of their military service"; and (3) in Count 3, he alleged a violation of R.C. 5923.05, "denying reservists on military leave rights and benefits provided by Cleveland to other similar employees on comparable furloughs or leave of absences under their CBA with the name plaintiff's union; specifically providing only differential pay to reservists on military leave compared to providing paid leave to other employees on jury duty, at least."[4]

---

[4]The city of Cleveland attempted to remove the matter to federal court, but the district court remanded it back to common pleas court.

{¶ 12} The parties filed motions for summary judgment, and in October 2019, in a detailed 32-page opinion, the trial court granted the city of Cleveland's motion on all of Lam's claims. Lam now appeals.

## Assignments of Error

I. The trial court erred in finding that Cleveland's PML ordinance was constitutional.

II. The trial court erred in finding that USERRA did not pre-empt the city from enacting and enforcing the PML ordinance.

III. The trial court erred in finding that R.C. 5923.05 was not enacted by the General Assembly exercising its authority under Section II, Article 34 of the Ohio Constitution.

IV. The trial court erred by not applying the current Ohio Supreme Court jurisprudence for its home rule analysis.

V. The trial court erred in holding that the ordinance was an exercise of local self-government under the Home Rule Amendment and prevailed over R.C. 5923.05.

VI. The trial court erred in applying res judicata to a special statutory scheme allowing Ohio veterans to relitigate military leave claims.

## Law and Analysis

### Standard of Review

{¶ 13} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶ 14} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

### Exercise of Military Power

{¶ 15} In Lam's first assignment of error, he contends that Cleveland Codified Ordinances 171.57 was an "unconstitutional exercise of military powers."

{¶ 16} According to Lam, the city was regulating military training by enforcing the ordinance and paying its employees differential pay while on military leave.  Lam cites the following language in the ordinance in support of his contention:  employees are "entitled to a leave of absence from their respective duties for such time as they are in the military service on field training or active duty."  Upon a plain reading of that language, it does not constitute an exercise of military power; that is, the ordinance does not regulate when or how military training occurs or the right to declare war.

{¶ 17} Thus, we agree with the trial court's finding that "Cleveland's ordinance does not purport to exercise military power.  It does not govern the right to declare war or engage or train troops.  Instead, it provides benefits to the City's employees while on military leave."

{¶ 18} The first assignment of error is therefore overruled.

## USERRA

{¶ 19} In his second assignment of error, Lam contends that the trial court erred in finding that USERRA did not preempt the city of Cleveland from enacting and enforcing its ordinance. According to Lam, R.C. 5923.05(A) is a benefit protected under USERRA.

{¶ 20} As mentioned, USERRA serves to prohibit employers from discrimination against veterans based on their military status and to guarantee veterans returning from service re-employment with their former employers. Relative to persons on military leave, USERRA provides in relevant part that such persons

> shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. 4301(a).

{¶ 21} The Act further provides:

> (a) Nothing in the chapter [38 USCS §§ 4301 et seq.] shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter [38 USCS §§ 4301 et seq.].

> (b) This chapter [38 USCS §§ 4301 et seq.] supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter [38 USCS §§ 4301 et seq.], including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. 4302.

{¶ 22} According the Lam, he was denied a benefit in violation of USERRA based on what he was paid while on military leave from his employment with the city. Lam previously admitted in *Lam I* that "[n]o provisions in USERRA directly compel civilian employers to pay their reservist employees during periods of deemed military leave." Nonetheless, he now contends that he was denied a benefit in violation of USERRA based on what he was paid by the city while on military leave.

{¶ 23} In regard to benefits while on military leave, USERRA requires that

> [A] person who is absent from a position of employment by reason of service in the uniformed services shall be
>
> (A) Deemed to be on furlough or leave of absence while performing such service; and
>
> (B) Entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. 4316(b)(1).

{¶ 24} The Act does not require employers to pay employees' wages while they are on military leave. Rather, under USERRA, the city was required to provide employees on military leave the same benefits that it generally provides to other employees "having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect * * *."

{¶ 25} Lam also cites 20 C.F.R. 1002.151 in support of his contention that the city was required to pay his wage while he was on military leave. The Code does not support his position, however. Specifically, it provides that "*if* the employer provides full or partial pay to the employee while he or she is on military leave," then the employer has the obligation to provide "other rights and benefits to which the employee is entitled under the Act." (Emphasis added.) *Id.* The use of the word "if" makes it clear that full pay while an employee is on military leave is not a mandate; rather, it is discretionary.

{¶ 26} We are also not persuaded by Lam's contention that he was denied comparable benefits to similar city employees who were on leave for reasons other than military leave or employees of other bargaining units. First, Lam compares military leave to jury duty leave. In determining whether one type of leave is comparable to another type of leave, 20 C.F.R. 1002.150(b) instructs that, "[i]n addition to comparing the duration of the absences, other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered."

{¶ 27} Jury duty leave is not comparable to military leave — the two leaves are for entirely different purposes. Moreover, the city maintains that it does not provide members of its police force a better benefit for jury duty leave than it does for military leave, and Lam has not produced any evidence demonstrating that the city's contention is false.

{¶ 28} In regard to other city employees, they are governed by other CBAs. As USERRA instructs, the city was required to provide employees on military leave the same benefits that it generally provides to other employees "having similar seniority, status, and pay who are on furlough or leave of absence *under a contract, agreement, policy, practice, or plan in effect * * *.*" (Emphasis added.) 38 U.S.C. 4316(b)(1)(B). Our review is limited to what the city can do under the governing CBA in this case; we decline to look at other city employees and their CBAs.

{¶ 29} Lam also cites the following three cases to support his contention that R.C. 5923.05 is a benefit protected by USERRA: (1) *Koehler v. PepsiAmericas Inc.*, 268 Fed. Appx. 396, 2008 U.S. App. LEXIS 5368 (6th Cir.2008); (2) *McGee v. Armstrong*, N.D. Ohio No. 5:11CV2751, 2011 U.S. Dist. LEXIS 148087 (Dec. 23, 2011); and (3) *Oswald v. Bae Indus., Inc.*, 6th Cir. No. 11-1119, 2012 U.S. App. LEXIS 10005 (May 16, 2012).

{¶ 30} In *Koehler*, defendant Pepsi appealed the order of the district court awarding liquidated and punitive damages to plaintiff Koehler. The issue on appeal was whether there was sufficient evidence to support the court's award of liquidated damages under USERRA and punitive damages under Koehler's state-law conversion claim. Pepsi claimed that the evidence did not establish that it acted in a willful, malicious, egregious, fraudulent, oppressive, or insulting manner and that the district court therefore erred in awarding liquidated and punitive damages to Koehler.

{¶ 31} The application of USERRA in *Koehler*, involved Koehler, who was a member of the Army Reserve, seeking military pay differential under Pepsi's military policy during the periods that he was absent on military leave. The human resources manager eventually agreed to pay Koehler the differential, and the amount owed was directly deposited into his bank account. Four days later, however, Pepsi withdrew the deposit from Koehler's bank account without his permission. Koehler was informed that Pepsi had changed its mind. The Sixth Circuit rejected Pepsi's contention that there was insufficient evidence to support the district court's award of liquidated damages under the USERRA and punitive damages for the state-law conversion claim. Specifically, the Sixth Circuit found that sufficient evidence supported the district court's finding of willfulness because the employer knew of or showed reckless disregard for its obligation to pay the differential as a benefit of employment. Thus, punitive damages were proper because the evidence showed that the employer acted with ill-will, malice, or a spirit of revenge. *Koehler* is not helpful to Lam's case.

{¶ 32} *McGee*, N.D. Ohio No. 5:11CV2751, 2011 U.S. Dist. LEXIS 148087, which Lam contends established that "R.C. 5923.05(A) and (B) are benefits protected by USERRA and actionable under it by reservist Plaintiffs," is likewise not helpful to his case. *McGee* involved a preliminary injunction motion in which the plaintiff maintained that he was not paid military leave according to the terms of his employment agreement.

{¶ 33} Although the plaintiff brought a USERRA discrimination claim, the district court did not make any decision in regard to the Act vis-à-vis the paid military leave offered by the employer. The district court focused, instead, on whether R.C. 5923.05 and the employee's employment agreement required full pay for 22 days or 31 days. The court reached its conclusion on the premise that the employment agreement and the employer's policy both required application of R.C. 5923.05 and the employment agreement was not a CBA. Here, the city contends, and we agree, as will be discussed below, that R.C. 5923.05 is not applicable because the city of Cleveland enforced its ordinance under its home-rule authority.

{¶ 34} In the third case, *Oswald*, 6th Cir. No. 11-1119, 2012 U.S. App. LEXIS 10005, there is no discussion of benefits while on military leave, and there is no discussion of benefits under R.C. 5923.05. Oswald concerned the contractual time limitation under which the plaintiff had to bring his USERRA claim. The Sixth Circuit held that the plaintiff's claim was procedural and not preempted under the 38 U.S.C. Section 4302(b). *Oswald*, therefore, is also not helpful to Lam's case.

{¶ 35} Neither USERRA nor the cases Lam cites demonstrate that Cleveland Codified Ordinances 171.57 denied Lam a benefit he was entitled to under the Act.

The second assignment of error is therefore overruled.

## R.C. 5923.05

{¶ 36} For his third assigned error, Lam contends that the trial court erred by finding that R.C. 5923.05 was not enacted by the General Assembly exercising its authority under Ohio Constitution, Article II, Section 34.

{¶ 37} Ohio Constitution, Article II, Section 34, governs "welfare of employees" and provides in its entirety that "Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the constitution shall impair or limit this power." According to Lam, R.C. 5923.05 was enacted under this constitutional provision and he relies on several cases to support his position.

{¶ 38} Upon review, none of the cases cited by Lam are on point, however. *Cleveland v. Ohio*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, dealt with the enforcement of a statute (R.C. 9.75) prohibiting residency requirements for contractors that conflicted with a municipal ordinance that required a certain percentage of contractors be residents of the municipality; *Lima v. State*, 122 Ohio St.3d 155, 2009-Ohio-2597, 909 N.E.2d 616, dealt with the enforcement of a residency prohibition statute (R.C. 9.481) that conflicted with municipal ordinances that require residency; *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174, dealt with the enforcement of statutes (R.C. 124.38 and 124.39) that provided for sick leave benefits that conflicted with municipal ordinances; and *Rocky River v.*

*State Emp. Rel. Bd.*, 43 Ohio St.3d 1, 539 N.E.2d 103 (1989), dealt with the Ohio Public Employee's Collective Bargaining Act's requirement for binding arbitration.

{¶ 39} None of the cases concern R.C. 5923.05 or municipal ordinances relating to military leave pay. Further, R.C. 5923.05 does not govern "all employees" as contemplated under Ohio Constitution, Article II, Section 34; rather, it governs employees on military leave and whose employers opt to provide the benefit under the statute.

{¶ 40} The third assignment of error is overruled.

## Home Rule

{¶ 41} In his fourth assignment of error, Lam contends that the trial court failed to apply the current Ohio Supreme Court case law regarding home rule in its analysis. In his fifth assignment of error, he contends that the trial court erred in finding that Cleveland Codified Ordinances 171.57 was an exercise of local self-government under the Home Rule Amendment and prevailed over R.C. 5923.05. The issues raised in these two assignments of error are the heart of this appeal.

{¶ 42} The city of Cleveland is a chartered municipality. The Home Rule Amendment, conferred under Section 3, Article XVIII of the Ohio Constitution, grants a municipality with "'authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.'" *Cleveland Taxpayers for Ohio Constitution v. Cleveland*, 8th Dist. Cuyahoga No. 94327, 2010-Ohio-4685, ¶ 17. "In determining whether a local ordinance conflicts with

the general law of the state, the court must consider whether the ordinance prohibits that which the [state law] permits, or vice versa." *Ohioans for Concealed Carry, Inc. v. Cleveland*, 2017-Ohio-1560, 90 N.E.3d 80, ¶ 10. The controlling cases on this issue relative to military pay are *State ex rel. FOP Ohio Labor Council v. Sidney*, 91 Ohio St.3d 399, 746 N.E.2d 597 (2001), and *Ohio Patrolmen's Benevolent Assn. v. Parma*, 61 Ohio St.2d 375, 402 N.E.2d 519 (1980).

{¶ 43} In *Sidney*, the city passed an ordinance similar to the one at issue here passed by Cleveland, where employees on military leave were paid the difference between their city salary and their military earnings. The governing CBA for the employees of the city of Sidney also provided for differential pay.

{¶ 44} The Ohio Supreme Court found that, although the city of Sidney's ordinance and the governing CBA conferred less benefits than R.C. 5923.05, Sidney had the right to elect how to provide military leave and compensation. Further, the court rejected the plaintiff's argument that the CBA was illegal because it called for paying less than R.C. 5923.05. Specifically, the court held that R.C. 5923.05 did not prevail over either the CBA or the city of Sidney's ordinance because the city had not elected to provide that benefit. The court relied on R.C. 4117.10(A), which, by its plain language, provides that if an agreement between an employer and public employees regarding leave of absence and compensation conflicts with R.C. 5923.05, the provisions of the CBA prevail. Thus, R.C. 5923.05 governs only if the municipality opted to provide such leave and compensation.

Cleveland opted not to; rather, it passed Cleveland Codified Ordinances 171.57 to govern.

{¶ 45} In *Parma*, 61 Ohio St.2d 375, 402 N.E.2d 519, the Ohio Supreme Court held that even a nonchartered municipality, which provides for differential pay, could pass a military pay ordinance that is in conflict with R.C. 5923.05. The court held that such an ordinance was a matter of local self-government: "It has been firmly established that the ability to determine the salaries paid to city employees is a fundamental power of local self-government." *Id.* at 383. The court noted that while it is "commendable to stimulate enlistment and maintenance in the armed services," it cannot be "at the expense of a municipality which must pay an entire salary for a 31-day period to an employee who is not performing any duties within the municipality." *Id.*

{¶ 46} Lam contends that *Sidney*, 91 Ohio St.3d 399, 746 N.E.2d 597 and *Parma* are old, outdated cases. They have not been overturned or superseded by statute, however. "We are bound to follow Ohio Supreme Court precedent." *Meisler v. Weinberg*, 2017-Ohio-1563, 90 N.E.3d 146 (8th Dist.), ¶ 10. *Sidney* and *Parma* are controlling precedent for this court, and we will follow them.

{¶ 47} *Sidney* and *Parma* make clear that Cleveland Codified Ordinances 171.57 was a proper exercise of the city's home-rule authority. "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local

self-government, and (3) the statute is a general law." (Citations omitted) *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 9.

{¶ 48} The Ohio Supreme Court subsequently shifted the order of *Canton's* three-part test in *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255. The court ordered that courts consider the police power — local government component first. The court held that if a local law relates solely to local self-government, then the analysis ends. The trial court here found, and we agree, that Cleveland Codified Ordinances was an exercise of local self-government.

{¶ 49} "An ordinance created under the power of local self-government must relate 'solely to the government and administration of the internal affairs of the municipality.'" *Complaint of Reynoldsburg v. Columbus Southern Power*, 134 Ohio St.3d 29, 2012-Ohio-5270, 979 N.E.2d 1229, ¶ 25, quoting *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 11. It is well-recognized the selection of, compensation, and duties of municipal employees are not a "concern of the state at large." *State ex rel. Hackley v. Edmond*, 150 Ohio St. 203, 216, 80 N.E.2d 769 (1948). *See also Painter v. Graley*, 84 Ohio App.3d 65, 616 N.E.2d 285 (8th Dist.1992). Therefore, the home rule analysis stops there.

{¶ 50} In light of the above, the fourth and fifth assignments of error are overruled.

## Res Judicata

{¶ 51} In his sixth assignment of error, Lam contends that the trial erred in dismissing Count 2 of his complaint on the ground of res judicata. Specifically, the court dismissed the count on res judicata principles, finding that it had already been litigated in federal court in *Lam I.*

{¶ 52} In *Abram v. Greater Cleveland Reg. Transit Auth.*, 8th Dist. Cuyahoga No. 80127, 2002-Ohio-2622, this court held that res judicata may be applied to bar state law claims that were previously rejected by the federal district court. The *Abram* court explained:

> "Regarding the issue of res judicata with federal court, 'to the extent to which a federal court judgment operates as res judicata in the federal court, it also operates as res judicata in Ohio State courts.' *Powell v. Doyle* (Oct. 8, 1998), 1998 Ohio App. LEXIS 4812, Cuyahoga App. No. 72900, at 8, citing *Horne v. Woolever* (1959), 170 Ohio St. 178, 10 Ohio Op. 2d 114, 163 N.E.2d 378. In order for a claim to be barred on the grounds of res judicata, the new claim must share three elements with the earlier action: (1) identity of the parties or their privies; (2) identity of the causes of action; and (3) a final judgment on the merits. *Id.* citing, *D&K Properties Crystal Lake v. Mutual Life Ins. Co. of New York* (C.A. 1997), 112 F.3d 257."

*Abram* at ¶ 23, quoting *McGowan v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. Cuyahoga No. 79137, 2001 Ohio App. LEXIS 3699 (Aug. 23, 2001).

{¶ 53} Count 2 in *Lam I* alleged that because of Cleveland Codified Ordinances 171.57, Lam and Graf were denied an employment benefit under USERRA. Here, in this case, Lam alleged in Count 2 that the military benefit of

R.C. 5923.05 is a benefit under USERRA, and he was denied that benefit. The language of Count 2 in *Lam I* and Count 2 in this case is almost identical.

{¶ 54} Upon review, we find that the trial court properly dismissed Count 2 on res judicata grounds. In all relevant aspects, that count was the same as Count 2 in *Lam I*, and the district court there rendered a final decision on the merits. Specifically, in finding that Lam and Graf were not denied a benefit of their employment within the meaning of USERRA by virtue of Cleveland Codified Ordinances 171.57, the district court stated the following:

> First, from the Court's reading of the relevant sections of the USERRA, it is clear that the intent of the federal legislation is to prohibit discrimination and less beneficial treatment of employee-service members because of their military service. Second, the Court notes that Plaintiffs' Complaint acknowledges that "[n]o provisions of USERRA directly compel civilian employers to pay reservist employees during periods of deemed military leave." Third, R.C. § 5923.05(A)(I) mandates that permanent public employee-members of the Ohio National Guard (like Plaintiffs) are entitled to a leave of absence *without loss of pay* when performing in the uniformed services. Last, under the City Ordinance § 171.57 and the operative CBA, employees on military leave of absence receive the difference between their full military pay and their civilian pay. They earn exactly what they would have earned had they not taken military leave. The USERRA does not mandate otherwise and there is no loss of pay as prohibited by the Ohio statute.

> From another perspective, as Defendant City points out, a chartered municipal corporation is authorized by the Ohio Constitution to exercise all powers of local self-government. An ordinance adopted pursuant to this home-rule authority (for example, § 171.57 governing military leave of Cleveland employees) prevails over any state law on the same subject matter. *State ex rel. Fraternal Order of Police v. City of Sidney*, 91 Ohio St.3d 399 (2001); *Mullen v. City of Akron*, 116 Ohio App. 417 (9th Dist.1962).

(Emphasis sic.) (Citation to docket omitted.)

{¶ 55} We find that Lam's attempt to change the claim here by invoking R.C. 5903.02 rather than USERRA, as he did in *Lam I*, does not save it from res judicata principles. "Causes of action share an identity 'if they are based on substantially the same operative facts, regardless of the relief sought in each suit.'" *Old Blast, Inc. v. Operating Engineers Local 324 Pension Fund*, 6th Cir. No. 16-1260, 2016 U.S. App. LEXIS 19745, 6 (Oct. 31, 2016), quoting *United States v. Tohono*, 563 U.S. 307, 317, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011).

{¶ 56} We are not persuaded by Lam's citation to *Kelm v. Kelm*, 92 Ohio St.3d 223, 749 N.E.2d 299 (2001). *Kelm* was a divorce proceeding with issues of child custody and parental visitation rights. The court held that res judicata should not be strictly applied because those issues remain subject to modification based on changed circumstances, as is always the case in those cases. There are no changed circumstances here; Lam had a full and fair opportunity to litigate Count 2, and the district court reached a decision on its merit as to the claim. The trial court therefore properly found the claim barred under res judicata.

{¶ 57} The sixth assignment of error is overruled.

## Conclusion

{¶ 58} Under Ohio law, the city of Cleveland, pursuant to its constitutional home-rule authority, was vested with the right to pay its employees differential pay while on military leave. Thus, at the times in issue, Lam was properly paid military leave in accordance with Cleveland Codified Ordinances 171.57 and the governing

CBA.  The trial court's judgment granting summary judgment in favor of the city of Cleveland is affirmed in all respects.

{¶ 59} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS;
MARY EILEEN KILBANE, J., CONCURS
IN PART AND DISSENTS IN PART

MARY EILEEN KILBANE, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 60} I agree with the majority opinion's conclusion that summary judgment was proper with respect to Count 2 of Lam's second amended complaint. I respectfully dissent, however, from the conclusion that summary judgment was appropriate on Count 1 and Count 3 of Lam's second amended complaint.  I believe there are genuine issues of material fact relating to Lam's declaratory judgment claim and the city's denial of rights and benefits to him that were

provided to other city employees. Therefore, I would reverse and remand the case to the trial court for review.

{¶ 61} Lam has obtained the rank of sergeant in the Cleveland Police Department for his full-time employment while also serving his country as captain of infantry of the Ohio Army National Guard. Lam has also served two overseas (Afghanistan and Jordan) deployments while employed by the Cleveland Police Department. I respectfully disagree with the conclusion that the city was within its authority to restrict PML benefits for certain employees — in this case, a police officer and military reservist. Lam's argument that the ordinance and his CBA operated to illegally restrict benefits to which he was entitled for performing his reserve military duty is persuasive. Further, the fact that the city amended its PML ordinance during discovery in this case significantly undermines the city's arguments in support of the former ordinance.

{¶ 62} For these reasons, I respectfully concur in part and dissent in part.